IN RE ESTATE OF JEREMIAH J. BETTS, SHEPERD W. BETTS et al., Appellants, v. JEREMIAH L. BETTS.

**Will Contests:**   EVIDENCE:   *Undue influence.*   Where undue influence was an issue in a contest of a will which disinherited contestant. evidence of a difficulty between contestant and his brother on the evening preceding their father's death, which difficulty was caused by the brother's refusal to allow contestant

113   111
125   748

113   111
e127  650

113   111
129    99

113   111
p132   72
f132  716

113   111,
135   438

113   111
143   217

to put his horses in the barn on the home place, where contestant had driven, was admissible, because the brother's feeling towards contestant was competent on the question of undue influence.

EXPERTS: *May not cover ultimate fact by opinion.* Where an expert witness testified for contestant as to testator's mental capacity, giving his evidence in response to hypothetical questions, a question, on cross-examination, as to whether, on an assumed state of facts, he would say that testator was capable of tranacting ordinary business intelligently, was properly refused, as it was equivalent to asking him as to testator's competency to make a will.

*Relevancy.* On an issue as to whether a will disinheriting contestant was the result of undue influence or of contestant's unfilial conduct, it being claimed by contestant that on visiting the home place, the day of his father's death, he had nothing to eat, because members of the family had their meals at his brother's house nearby, and contestant was not invited, a conversation had that night with his mother, in which she said that she would not go to bed until he had something to eat, was admissible, as showing the general state of feeling between the parties, which would have a bearing on the question of undue influence.

CROSS EXAMINATION: *Harmless.* Where testator's mental capacity was in issue, and the witness was asked on cross-examination whether he ever heard of the experience of an English statesman, who, on talking to a number of patients in an insane asylum, thought they were sane, the witness replied that he had heard of similar instances, and the inquiry was dropped, no prejudice could have resulted therefrom to proponent.

EVIDENCE IN EXPLANATION. Where the proponents of a will disinheriting contestant claimed that it was not the result of undue influence, but was the result of ill feeling between contestant and his father caused by contestant's bad conduct, and a witness testified that, while he was talking with the father, contestant approached and told witness not to believe a word the father said,—that it was all a lie,—it was not error to allow contestant, in explanation of his conduct, to testify that what he said on the occasion was that "father is repeating some lies folks have told him," and that he had heard of things told to his father derogatory to himself.

*Same.* And what his wife told contestant, is admissible to show with what intent contestant made statements to said witness.

*Harmless exclusion.* Where a witness in a will contest testified that, while at testator's house, testator abruptly said, "we are catching rats here by the sackful," the error in refusing to allow him, on cross examination, to state what impression the remarks made on him was not prejudicial, where he did state immediately afterwards that he was surprised at the remark and regarded it as strange.

**Review on Appeal:** FINDINGS: *When either of two is sustained by the evidence.* Where a verdict in an action contesting a will consists of special findings in contestant's favor on the two issues involved, viz., undue influence and mental incapacity, it will not be disturbed on the ground that it is not supported by the evidence, if either of the findings is good.

SPECIFIC OBJECTION BELOW: *Immaterial, incompetent and irrelevant construed.* Where the party objecting to the admission of an extract from a medical book stated that it was incompetent, immaterial and irrelevant and that no point was made "because it is contained in or is a part of what purports to be a book or treatise by the author named, but because the subject matter is incompetent" and that his objection did not go to the competency of this class or character of testimony, his objection was to the competency of the subject matter, and not to the form in which the testimony was offered and the latter objection is waived and cannot be urged on appeal.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

THURSDAY, JANUARY 24, 1901.

PLAINTIFFS are proponents of the last will and a codicil thereto, of Jeremiah J. Betts. Defendant filed objections to the probate of both will and codicil on two grounds: (1) That the testator was of unsound mind at the time both instruments were executed, to such an extent as deprived him of testamentary capacity; (2) undue influence. There was a jury trial, which resulted in a verdict in favor of contestant. Proponents appeal.—*Affirmed.*

*S. F. Balliett* and *W. G. Harvison* for appellants.

*Read & Read* for appellee.

WATERMAN, J.—The parties to this action are children of Jeremiah J. Betts. The will of the latter, which is attacked, was executed on December 9, 1896, and, after giving absolutely to the wife of testator the personal property which in testator's hands would be exempt from execution, and also a life estate in all real estate, devises the remainder in equal shares to his children, except the contestant, to whom is given the sum of $100, as his full share of the estate. The codicil, which is also contested, was executed some four months later, and simply revokes the legacy of $100 to contestant, and declares that he is to receive nothing whatever from the estate. Testator was almost 80 years of age when these instruments were executed. He was a farmer, and contestant, with his family, had lived on the farm for a time, aiding his father in carrying on business. There was trouble between contestant and both his parents. No little feeling was engendered on each side. On the contestant's part, all this trouble is charged to wicked efforts on the part of his brothers and sisters to injure him with his father. On the other side the charge is made that the trouble grew out of contestant's unfilial conduct. During the year 1897 testator had two attacks of illness—one in March, and the other some two months later. His death, however, did not occur until January 28, 1898. It is contended by contestant that the mental infirmity of testator was exhibited first several years prior to to the making of the will, and that his mind from that time on steadily failed with advancing age, aided by an attack of the grip in 1895, and the other illnesses mentioned.

It is first argued by counsel for appellants that the verdict is not supported by the evidence. The record is quite voluminous. It would serve no useful purpose for us to set out the testimony in detail. As usual in cases of this character, it is in sharp conflict. That there was evidence sufficient to take contestant's case to the jury on the question of

mental incapacity was practically admitted by proponents in the trial court, for they did not ask the court to withdraw that issue. On the contrary, they requested a number of instructions on that branch of the case. As the verdict consisted of special findings on the two issues, both in contestant's favor, if either is good there can be no reversal on the ground now under consideration. But, whatever proponents thought, it is our opinion there is a substantial conflict in the evidence. Some of us would have been better satisfied with a verdict the other way. But that is not enough to warrant us in interfering with the result. Where there is a real conflict of evidence, the case is for the jury. *Phillips v. Phillips,* 93 Iowa, 615-618. In this case it was said that the rule announced in *Meyer v. Houck,* 85 Iowa, 319, does not authorize this court to determine as to whether the preponderating weight of all the evidence is in favor of one party or the other, nor to pass upon the credibility of the witnesses. See, also, on this point, *Scott v. Railway Co.,* 112 Iowa, 54.

II. The court admitted in evidence an extract from a medical work (Maudsley on Responsibility in Mental Diseases), and it is thought this was a violation of the rule announced in *Bixby v. Bridge Co.,* 105 Iowa, 293. We find there is no proper foundation in the record for the position taken by counsel for appellant. This book was first offered in evidence by contestant, and on objection the offer was withdrawn; counsel for contestant saying, in effect, they would not put it in over an objection, although the court might be willing to receive it. Later the offer was renewed. The objection was made that it was incompetent, immaterial, and irrelevant, but that no point was made "because it is contained in or is a part of what purports to be a book or treatise by the author named, but because the subject-matter is incompetent." Counsel for contestant then said: "I understand that your objection does not go to the competency of this class or character of

testimony ?" to which response was made: "That is it." It is clear, the objection was to the subject-matter, and not to the form in which the testimony was offered. The point now presented must be regarded as waived. The trial court was certainly justified in believing that the objection did not go to the competency of the book.

III.   Contestant was permitted to testify, over objection, to a difficulty with his brother Sheperd, caused by the latter's objecting to contestant's horses being placed in his father's barn when contestant had driven out to the home place on the evening preceding the father's death. This ruling can be sustained on the ground that the testimony tended to show Sheperd's feelings towards his brother, and that this shed some light on the issue of undue influence. The mother interfered in this difficulty in contestant's behalf. What she said was repeated by contestant on the stand, and to this there is exception taken. It does not appear, however, that any objection was made to this part of the witness' testimony in the trial court.

IV.   One Dr. Voldeng was an expert witness, who testified for the contestant as to the condition of the testator's mind. His evidence was given in response to hypothetical questions. On cross-examination he was asked to say whether, upon a certain assumed state of facts, he would say testator was capable of "transacting ordinary business intelligently." Practically, that was equivalent to asking him whether testator was competent to make a will, and this was the ultimate fact for the jury to find. The court sustained an objection to the question. In *Pelamourges v. Clark,* 9 Iowa, 1, the trial court ruled out this question: "What was his [testator's] state of mind, as regards his capactiy to make a disposition of his property, on or about November 20, 1850 ?" In sustaining the ruling this court said, "The answer of the witness to the fifth interrogatory was rightly suppressed, for the reason that a witness cannot be permitted to give his opinion in answer

to an inquiry which embraces the whole merits of the case, and leaves nothing for the jury to decide;" citing *De Witt v. Barly,* 17 .N. Y. 347; *Jameson v. Drinkald,* 12 Moore, 148; *Gibson v. Gibson,* 9 Yerg. 329. See, also, *Muldowney v. Railroad Co.,* 39 Iowa, 615-622, and Rogers Expert Evidence, pp. 37, 47.

. V. Proponents, among other things,. charged contestant with asserting that his father was a liar. One Harris, a witness in their behalf, testified that, on one occasion when testator was talking with him, contestant came up and said: "Gentlemen, don't believe a word he says. Every word he speaks is a God-damned lie." Contestant asserts that what he said on this occasion was: "Father is repeating some lies the folks told him. * * *" In explanation of this conduct he was permitted to say that he had heard of things being told his father derogatory to himself, and these remarks he was allowed to repeat. As an explanation or excuse for his remark to Harris, we think this testimony was properly received. So, too, the testimony of contestant's wife as to what she had told him was admissible on the same ground. These matters bore upon contestant's motive and intent in making the remark to Harris, and were admitted for this purpose only.

VI. A witness testified that on one occasion when he went to testator's house the latter abruptly said: "We are just catching rats here by the sackful." On cross-examinaiton proponents asked what. impression this remark made upon him. Objection being made, he was not permitted to answer. If there was any error in this ruling, it was without prejudice; for immediately following this the witness stated his impression, and said that he was surprised at the remark and regarded it as strange. What we have just said disposes of the error assigned on the. testimoney of the witness Doke.

VII. It is urged that Lewis, a non-expert. witness for contestant, did not state facts sufficient to authorize. him. to

express the opinion he did as to testator's mental condition. There is some authority for saying that it is not within the province of the court to pass upon the sufficiency of the information upon which the witness rests his opinion; that this is a matter for the jury. *McClackey v. State,* 5 Tex. App. 331. But, without indorsing this doctrine, we have to say that no general rule can be laid down as to what opportunity for observation will be sufficient. Courts should be slow to make any hard and fast rule, for all the facts out of which the opinion grows are given the jury. Lewis' observation and association were certainly sufficient to give his opinion some weight. See Rogers Expert Evidence, p. 92. A further objection to the testimony of Lewis is that he was allowed to base his opinion upon other facts than those testified to by him. This assumption is not justified by the record.

VIII. Evidence was given of some conversation between contestant and his mother on the night preceding testator's death. It is claimed by contestant that while he was at his father's house that day he had nothing to eat; that all other members of the family went to the house of one of the brothers, near by, and had their meals; and that he was not invited. When night came, as he was permitted to testify, his mother said she would not go to bed until he had something to eat. This could not have been given any weight by the jury, except as showing the general state of feeling between the parties, and for this purpose it was admissible. A witness, on cross-examination, was asked whether he ever heard of the experience of an English statesman in an insane asylum, who, after talking with a number of patients, thought they were sane. The witness responded that he had heard of similar instances. Here the matter was dropped. It is inceivable how any prejudice could have resulted to appellants from this incident. Finally, we will say there was no error in allowing the cross-examination of the witness Lacey,

nor insustaining the challenges to the two jurors, Barnett
and Cleary. It does not appear but that the jury which
tried the case was fair and impartial. Furthermore, we
think the court's action was justified by the answers of the
jurors on their *voir dire.*—AFFIRMED.