In the Matter of the Will of HENRY VAN HOUTEN, deceased.

**Wills:** CONTEST: REVIEW ON APPEAL.   Where it is contended on appeal by the proponents of a will that a verdict should have been directed in their favor, as against a contention of incapacity on the part of the grantor, the court will assume the truth of contestant's evidence.

**Same.** Where both the questions of mental competency and undue influence in the execution of a will are submitted to the jury and both are determined affirmatively, the fact that the finding upon one of the issues was without support in the evidence will not entitle the proponent to a reversal, if there was evidence on which the other finding can be upheld.

**Evidence:** TRANSACTIONS WITH A DECEDENT.   The contestant of a will and heir of the testator is incompetent to testify to a transaction between the testator and a third party and the conversation relating thereto, where it appeared that the witness was present at the suggestion of the third party to attend to and look after the interests of the testator, and he in fact transacted the business in question for him.

**Same:** SUFFICIENCY OF OFFER: REVIEW OF RULING.   Where it appeared in the abstract that the proponents of a will identified and offered separately the notice, petition and answer in a proceeding by one of contestants for the appointment of a guardian of testator's estate on the ground of his mental incapacity, and it also appeared that the record of the proceedings, among which was a judgment dismissing the petition on the merits, was offered, there was a sufficient showing of an offer of the judgment to authorize a review of the ruling excluding it.

**Wills:** CONTEST: MENTAL CAPACITY: EVIDENCE. A judgment dismissing proceedings for the appointment of a guardian of the estate of a testator, instituted on the ground of mental incompetency, is admissible as bearing upon his mental condition at the time of his subsequent execution of a will.

*Appeal from Mahaska District Court.*—W. G. CLEMENTS, Judge.

WEDNESDAY, FEBRUARY 16, 1910.

PROCEEDINGS for probate of will. Contest by certain heirs who were dissatisfied with the distribution of the property provided for in said instrument. Verdict and judgment for contestants and proponents appeal.—*Reversed.*

*Hayes & Amos* and *George G. Gaass,* for appellants.

*S. A. Reynolds, John N. McCoy,* and *F. H. Peterson,* for appellees.

WEAVER, J.—The objections to the probate of the will are based upon the alleged mental incompetency of the testator and undue influence under which it was executed. Henry Van Houten was a native of Holland, who emigrated to this country after arriving at years of maturity. He was well educated, had been a teacher, and until he came to this country and settled in Iowa had not been engaged in farming. He was born in the year 1812, and was twice married. By his first marriage he had several children. His second wife was a widow and brought to the family several children of her first marriage and one child born to her and deceased survives. After tarrying awhile in the Eastern states deceased came to Iowa in 1853, and founded a home in a Dutch settlement in the central part of the state. Here he resided until his death at the advanced age of about ninety-six years.

He acquired a farm of some three hundred to four hundred acres, which was paid for, and he enjoyed a fair degree of comfort and prosperity.   Not being reared as a farmer, he did very little of the actual work of cultivating and improving his land, but for many years relied very largely upon his children and stepchildren, most of whom continued in the family, assisting in working and caring for the farm, for several years after reaching their majority. In time, however, all the children, save a daughter who remained with him till the end of his life, went out to their own homes, or in pursuit of their own enterprises.   Among the children of the first marriage were two sons Elko and William, who with one sister are the contestants herein. The two sons named, having gone into business on their own account, met with reverses, and their father was compelled to pay debts to a considerable amount contracted by them, and on which he was liable as their surety.   After this occurrence the relations between father and sons became for a time at least unpleasant, and he was wont to refer to his financial loss on their account with bitterness.   With advancing years he became to some extent debilitated, physically, and, as contestants claim, mentally as well.   In 1904, or perhaps a year or two prior to that date, he called upon Mr. Neyenesch, an old friend and fellow countryman, to prepare his will.   Mr. Neyenesch drew the will, as he says, according to the direction and dictation of Van Houten, and it was then duly executed by him.   By this instrument he gave to his son Elko the sum of $1 only.   To his minor grandson, a son of William, he gave a half interest in fifty acres of land, and certain books, but made no provision for William, except the use of the property given the grandson until the latter should reach his majority.   The bulk of the remainder of his estate, both real and personal, he gave to Syke Van Houten, the daughter, who had remained with him and cared for him. On January 20, 1906, he called Mr. Neyenesch to his

home, and procured him to prepare a new will, which was executed, and the first instrument destroyed. The principal change made by the later will in the disposition of his estate was the withdrawal of a small bequest made to his daughter Neeltje Van der Tunk, living in Holland. As to his sons Elko and William, the second will was a copy or repetition of the first. In 1908, two and one-half years after the execution of the second will, and four years at least after the date of the first one, William Van Houten filed petition in the district court, alleging that his father Henry Van Houten was of unsound mind and incompetent to manage and care for his property, and was wasting the same, for which reasons he asked the court to appoint a guardian to care for and preserve the estate. The deceased appeared to this proceeding, and joined issue upon the allegation of the petition, and alleged his perfect competency to manage and control his own property and business. The cause was tried to the court, which found the allegations of the petition had not been sustained, and entered judgment for the defendant. Among other things put in evidence upon said trial was the deposition of Henry Van Houten, which has been introduced into the present record.

The foregoing statement of some of the salient features of the history of this controversy has seemed necessary in order to make entirely clear the point and bearing of appellant's exceptions to certain rulings of the trial court. As has already been stated, the contestants allege, first, that at the date of the will the testator was of unsound mind, and without testamentary capacity; and, second, that the execution of the will was procured by undue influence exercised by the daughter Syke Van Houten and others. The jury found for the contestants on both propositions.

I. It is contended for the appellants that there is no evidence upon which the finding against the testa-

mentary capacity of the deceased can be sustained, and that
the court should have directed a verdict
thereon in favor of the proponents. As a new
trial must be awarded for reasons hereinafter
stated, it is proper that we refrain from any discussion
of the evidence further than to say that, while the testator
is shown to have been a man of much more than ordinary
intelligence, and appears to have retained his faculties
in a remarkable degree to an age beyond the years allotted
to an average person, yet if we assume the truth of all the
evidence offered in support of the contestant's claims (and
we must so assume in considering whether a verdict should
have been directed), we can not say as a matter of law
that it did not present a question of fact for the jury.

*1. Wills: contest: review on appeal.*

II.   A careful examination of the record discloses
an entire absence of evidence on which to base a finding
of undue influence, and in our judgment this question
should have been withdrawn from the jury.
But the court is committed to the rule that,
where the questions of mental incompetency and undue
influence are both submitted to the jury, and both are
determined affirmatively, the fact that the finding upon
one of them is without support in the evidence does not
entitle the proponent to a reversal if there is evidence on
which the other finding can be upheld.  *Will of Sellick,*
125 Iowa, 680; *Bett's Estate,* 113 Iowa, 115; *Wharton's
Estate,* 132 Iowa, 716.   If the question were one of first
impression, the writer would be strongly inclined to the
opposite conclusion, and to hold that manifest error in the
submission of either question, and particularly where the
finding of the jury thereon is also manifestly erroneous,
is ground for reversal; but the rule as stated has been too
often followed to be now discarded without introducing
unfortunate confusion in our decisions.

*2. Same.*

III.   The contestant William Van Houten as a wit-
ness in his own behalf was permitted, over the objection

to his competency, to testify to a transaction in which his
father in the year 1905 gave or renewed a
promissory note to one Tilma, and to detail
the conversation had and other incidents of
that occasion.    It is the claim of the appellants that
this witness took part or participated in the transac-
tion referred to, and was therefore incompetent to testify
concerning it.    Under the record presented we think the
objection should have been sustained.    According to the
showing of the witness himself he was there at the sugges-
tion of Tilma to see that "everything was done straight,"
or, as we understand the expression, to protect the interests
of his father, and see that no advantage was taken of him.
He further says there was no one there but himself to act
for his father, and that he filled out the note for his father's
signature.    That he may have done it at the request or
suggestion of Tilma instead of his father is immaterial.
He was a factor in that transaction, and clearly within the
prohibition of the statute.

3. EVIDENCE:
transactions
with a
decedent.

    IV.    The proponents offered in evidence the original
notice, petition, answer and judgment in the proceedings
to which we have above referred as having been instituted
by William Van Houten to have his father
adjudged mentally incompetent to care for
his estate and to appoint a guardian for that
purpose.    The court sustained the contest-
ants' objection to the offer, but after the case had been
closed, and before it had been submitted to the jury,
changed the ruling in part, and admitted in evidence the
original notice, petition and answer.    Error is assigned
upon the exclusion from the jury of the judgment dis-
missing said proceedings.    Appellees contend that the rec-
ord does not show any offer of the judgment in evidence,
but we think it sufficiently appears.    It is shown by the
abstract, and not denied, that the proponents identified
and offered separately the notice, the petition, and the

4. SAME:
sufficiency
of offer:
review of
ruling.

answer.   It is also shown that the record book was pro-
duced, the record of the proceedings in said case was also
offered, and that among such proceedings is a judgment
dismissing the petition on the merits.   To hold with
appellee that this does not show a sufficient offer of the
evidence to permit a review of the ruling excluding it would
be to demand a technical precision to which very few
abstracts submitted to this court ever attain.

We have therefore to consider whether the judgment
in testator's favor in 1908, upon the question of his mental
incompetency was competent and admissible in evidence
as to his mental condition in 1906 at the date
of the will in controversy.   From the fact
that sanity or insanity exists at a given time
it does not necessarily follow that the same condition existed
at a date two years earlier, though in certain forms of
mental unsoundness inferences may be drawn as to the
period of its development and the probability or improbabil-
ity of its continuance.   In this case, if the testator's mind
was unsound at the date of the will, it is entirely certain that
such unsoundness was of the kind usually called "senile
dementia" or senile decay, a decay of mental powers re-
sulting from old age.   It is progressive and incurable.
While the process of deterioration may sometimes be
delayed, the ground lost is never recovered.   There are
no periods of convalescence, no lucid intervals, and when
once a condition of incompetency is reached, it is, in the
very nature of the case, permanent.   It follows inevitably
that if the proponents of a will made in 1906 can establish
to the satisfaction of the jury that the testator was mentally
competent to transact business in 1908, he was not a senile
incompetent at the date of the will made in 1906, and if
judgment in the guardianship proceedings has any proba-
tive force or value on that proposition, its offer in evidence
should have been sustained.   The question is one which
has been quite frequently considered in other states, but

5. Wills: con-
test: mental
capacity:
evidence.

so far as we have been able to discover has never been directly ruled upon by this court.

In the *Fenton Case,* 97 Iowa, 195, the point was raised, but the decision thereof was expressly reserved. It is manifest that such record can not be admitted as evidence of a former adjudication in the ordinary sense of that term. It is more nearly like a finding in a proceeding *in rem* where, as a matter of public interest and right, and for his own protection, the mental competency of an individual is determined. If a person be insane, and thereby a menace to public safety, or, if not violent or dangerous, yet so mentally unsound that he is liable to waste his estate and become a public charge, the law provides methods by which the rights and interests of the public and of the insane person himself may be preserved and protected. If it be thought desirable that he be restrained of his liberty or committed to a hospital for treatment, complaint may be laid before the commissioners of insanity of his county, and upon hearing the truth may be judicially determined and proper orders made. But if personal restraint be thought not necessary, he may be summoned into court, and if the charge of insanity is sustained, a guardian will be appointed and authorized to take charge and control of his property, In neither case is the proceeding an adversary one in the same sense that the plaintiff seeks or can be granted any relief against the defendant. While such plaintiff may be a prospective heir or a creditor, and by such proceedings hope to indirectly benefit himself, yet it is not in such capacity or right that he is permitted to institute the proceedings. Any citizen of the jurisdiction has a right to bring it, and in so doing he represents the public. If the defendant be adjudged mentally incompetent, and a guardian be appointed, every person—or at least every person within that jurisdiction—is held to take notice of it, and persons thereafter dealing with the one under guardianship do so at their peril. In New York and some

other states all contracts made with a person under guardianship are held absolutely void, even though made with strangers having no actual knowledge of the ward's mental incapacity. *L'Amoreux v. Crosby*, 2 Paige (N. Y.) 422, (22 Am. Dec. 655); *Wadsworth v. Sharpsteen*, 8 N. Y. 388 (59 Am. Dec. 499), and even as to contracts made before lunacy proceedings are instituted, if the finding is to the effect that mental incompetency has existed from a time anterior to the making of such contracts, the inquisition is held to be *prima facie* evidence of incapacity at such date.    But the presumption, whether conclusive or rebuttable, "extends to all the world, and includes all persons, whether they have notice of the inquisition or not." *Hughes v. Jones*, 116 N. Y. 67 (22 N. E. 446, 5 L. R. A. 637, 15 Am. St. Rep. 386); *Hart v. Deamer*, 6 Wend. (N. Y.) 497; *Osterhout v. Shoemaker*, 3 Hill (N. Y.) 513; 1 Greenl. Evidence, section 556.    In most jurisdictions the rule is somewhat less rigid than in New York, but it is everywhere held with almost entire unanimity that such finding, whether of soundness or unsoundness, is at least *prima facie* evidence of the fact so found.    See 17 Am. & Eng. Ency. Law (2d Ed.) 606; 7 Ency. of Evidence, 477.

Speaking to this point, Mr. Wigmore says: "There is not, and never has been, any doubt as to the admissibility of an inquisition of lunacy in any litigation whatever to prove the person's mental condition at the time.    The only controversy has been whether it is conclusive." 3 Wigmore's Evidence, section 1671. Treating of the same subject, another author says: "An adjudication of insanity will stand thenceforward until reversed as proof of the fact, and the burden of proof will shift to the party alleging sanity.    So if the finding of the former tribunal established the sanity of the party, it seems that finding, while not conclusive of sanity, is competent evidence to prove it." Buswell on Insanity, section 194.    To say that the finding of the court that the defendant is sane is of no force or

effect, except as against the person entering the complaint, would give rise to grossest injustice. If such were the rule, on the very day he is found sane in an action brought by A., he may be subjected to a second action by B., and so on indefinitely until he is exhausted in both mind and estate, or a dozen such proceedings might be pending against him at the same time, and none be subject to a plea in abatement on the ground of another action pending. Surely such can not be the intent of the law and an adjudication once had in an action regularly brought and prosecuted must be given some force and effect against the world at large, and it is well within the bounds of reason and precedent to say that it affords at least *prima facie* proof of his status as there found. *Den v. Clark,* 10 N. J. Law, 217 (18 Am. Dec. 417). It follows that the record of the adjudication in the guardianship proceedings should have been admitted in evidence.

Other questions argued are not likely to arise on another trial, and need not be further considered.

For the reasons stated, the judgment of the district court is reversed, and cause remanded for further proceedings not inconsistent with the foregoing opinion. Costs of this court will be taxed to the contestants.

*Reversed.*