JOHN SLOOP, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 19, 1904, and February 5, 1906.

1. **EVIDENCE: Freight Contract: Reasonable Time.** While all prior and contemporaneous agreements are merged in a written contract of shipment, yet if such contract does not provide the time within which the shipment is to be completed the performance must be within a reasonable time, and evidence of the time similar trains to the one on which the shipment is had, makes the run is proper, as the question of reasonable time is one of law and fact. So evidence as to the understanding of the arrival at destination is admissible for the same purpose.

2. **CARRIERS: Reduced Rate: Evidence.** A carrier by a fair contract on sufficient consideration can limit its common-law liability and recitals of such limitations in a contract are prima facie evidence thereof; but the evidence is held sufficient to show the rate in this case not to have been a reduced one.

3. **EVIDENCE: Rates on File With Interstate Commission: Parol Evidence.** Parol evidence relating to freight rates on file with the interstate commission is not admissible since a copy of such rates is best evidence.

Appeal from Randolph Circuit Court.—*Hon. Samuel Davis,* Special Judge.

AFFIRMED.

*Geo. S. Grover* for appellant.

(1) Upon the undisputed testimony, in this case, the plaintiff was not entitled to recover. Perry v. Railroad, 89 Mo. App. 49; Sloop v. Railroad, 93 Mo. App. 605. (2) The instructions given at the plaintiff's request were erroneous. Authorities cited, supra. (3) The instruction asked by defendant and refused, should have been given. Perry v. Railroad, 89 Mo. App. 49. (4) It would be a fraud on the defendant to permit the plaintiff to recover in this case, more than the values fixed by him. Brown v. Railroad, 18 Mo. App. 568; Wyrick v. Railroad, 74 Mo. App. 406; Kellerman v. Railroad, 136 Mo. 177; Hart v. Railroad, 112 U. S. 331; 3 R. S. U. S. 1901, pp. 3160-1.

*Fogle & Saxbury* for respondent.

(1) When a shipper delivers his stock to a common carrier it is the duty of the common carrier to transfer the same quickly, safely and diligently to the point of destination. Davis v. Railroad, 89 Mo. 340; Schwab v. The Union Lines, 13 Mo. App. 169; Falkner v. Railroad, 51 Mo. App. 311; Tucker v. Railroad, 50 Mo. 385; Hutchinson on Carriers, page 235 and note 1; Dawson v. Railroad, 79 Mo. 296. (2) To except the common carrier from its common-law liability there must be a special contract, and there must be a good consideration to support said contract or it is void. Kellerman v. Railroad, 136 Mo. 137; Wilson v. Railroad, 66 Mo. App. 392; Paddock v. Railroad, 60 Mo. App. 328; Duvenic v. Railroad, 57 Mo. App. 550; Conover v. Exp. Co., 40 Mo. App. 31; Crow v. Railroad, 57 Mo. App. 140; Rogan v. Railroad, 51 Mo. App. 665.

(3) Calling a freight rate a schedule rate, a re-duced rate, or a tariff rate does not make it so. Brown-ing v. Ry., 89 Mo. App. 325, 90 Mo. App. 333. (4) An inference of negligence on the part of the defendant is sufficient to let the case go to the jury. Whiting v. Rail-road, 101 Mo. 641; Leonard v. Railroad, 54 Mo. App. 293; Blanchard v. Railroad, 60 Mo. App. 267; Clark v. Railroad, 39 Mo. 185, 90 Am. Dec. 458; Rankin v. Rail-road, 55 Mo. 167; 4 Elliott on Railroads, sec. 1516.

BROADDUS, P. J.—This cause was before this court on a former occasion and will be found reported in 93 Mo. App. 605.

Before this cause was tried anew in the circuit court plaintiff filed his third amended petition. The second amended petition upon which the case was formerly tried set out that on the 10th day of October, 1900, he delivered to defendant for shipment fifty-two head of fat cattle which defendant agreed, for certain charges to it paid, to safely and quickly transport and deliver to plaintiff's agent in Chicago, Ill.; that if said cattle had been transported to said point within a reasonable time they would have arrived at their point of destina-tion in time to have been sold on the morning market of October 11, 1900; but that by reason of defendant's neglect they did not arrive for said morning market; that plaintiff was compelled thereby to hold them for the succeeding day; and that in the meantime the market de-clined. He claims that he was damaged by reason of being compelled to sell on the declining market, and for additional shrinkage of the cattle, and feed.

The first count of the third amended petition is sub-stantially like the foregoing with the further allegations that a delivery of said cattle for the morning market of October 11th at Chicago was a reasonable time for their delivery; and that plaintiff and defendant knew and un-derstood that plaintiff was shipping his cattle to be de-livered in time for such market.

The second count is like the first count of the petition, except that plaintiff sold his cattle late on the day of the 11th of October on a declining market instead of on the following day.

The defendant in its answer, among other matters, sets out a written contract between plaintiff and defendant containing the terms and conditions upon which said cattle were shipped. This writing specifies that the agreed rate of shipment was a reduced rate, and that in consideration of such reduced rate in case of loss or injury to said cattle plaintiff agreed that the value of any of said animals should not be in excess of $50; and that in consequence of any unusual delay or detention of said cattle while on their trip from any cause whatever, the plaintiff agreed to accept as full compensation for such delay the amount actually paid out for food and water for said cattle. The answer also set up as a defense the interstate commerce law and that thereunder it had a schedule of rates made in compliance with said law and that the contract of shipment between plaintiff and defendant was a lawful contract. The plaintiff's reply alleged that the contract set up in defendant's answer was unfair and fraudulent, but as the court refused to so instruct the jury it can have nothing to do with the questions in the case.

The cattle were shipped at Queen City at about 5 o'clock a. m. on the 10th day of October on a special train which would arrive in Chicago, according to the usual time for such trains, in about twenty-four hours; but it did not arrive until about four hours later—that is, about 9 o'clock a. m. on the 11th day of October. These cattle were carried in the same train with other cattle to Decatur, Illinois, where for good reasons the train was divided into two sections. The first going out arrived at Chicago in time for the morning market of that day; the second, containing plaintiff's cattle, arrived later and not in time for said morning market. The market declined after the morning hours and plaintiff kept

his cattle and sold them on the following day for less than he could have got for them on the morning of the previous day. He introduced evidence of shrinkage and other elements of damages.

The evidence showed that the schedule time between Queen City and Chicago was about thirty-five hours. Bowen, defendant's agent at Queen City, informed plaintiff before he shipped his cattle that they would arrive on the special train at Chicago in about twenty-four hours, and it sufficiently appears that plaintiff made the shipment over defendant's railroad with such expectation and understanding. The rate charged for the shipment was twenty-two cents per hundred pounds. This, the agent stated, was the only rate for such shipment —that there was no higher or lower rate. It does not appear that there was any particular cause that prevented plaintiff's cattle from arriving at their destination much later than the other cattle shipped at the same time and on the same train from Queen City and sent forward from Decatur on the first section of said train after it had been divided at the last-named station. The cattle arrived in Chicago in twenty-eight hours from the time of shipment—seven hours less than the printed schedule time, and four hours after the usual time for special trains.

Defendant offered to prove by Samuel B. Knight, defendant's general freight agent, that a shipper who preferred not to enter into the form of contract, as set out, for a freight rate of twenty-two cents per hundred weight would be charged a higher rate, "as shown on pages 8 and 9 of the rules and regulations of the Wabash Railroad Company, shown in notice 17500, Interstate Commerce Commission, No. 400, in effect June 1, 1898, and continuously to the present time." And that he would also state that this schedule of rates was on file with the said Interstate Commerce Commission. The evidence offered being secondary in its nature, defendant proved by said Knight that after a careful search in

his office he could not find said schedule of rates, and that they were out of print. He testified that he was only able to find the receipt of the said commission, that said schedule had been received and filed with it. Upon objection by plaintiff, the court refused to admit said evidence so tendered.

The defendant contends that there is no evidence showing want of care in the transportation and delivery of the cattle, therefore plaintiff was not entitled to recover. When the case was formerly tried the court instructed the jury to find for defendant. This court reversed the cause on the ground that under the evidence the question was one of both law and fact, and consequently it should have been submitted to a jury. That particular phase of the case has not changed, as the facts are practically the same. But defendant's argument is that the agreement and understanding that the cattle would be transported to Chicago in twenty-four hours was had before the written contract was entered into and that as it does not contain any such agreement or understanding it is no part of the contract between the parties. The rule that all prior or contemporary agreements are merged in the written one is not disputed. But if the written contract does not provide for a time within which an act is to be done, it is also a familiar rule that performance must be within a reasonable time under the circumstances. The writing does not provide for the time when the transportation of the cattle shall be completed, therefore we must look to the facts and circumstances to determine the matter. And as there was evidence that the special freight train under ordinary conditions should have arrived at Chicago for the morning market of October 11th, the question was properly left by the court for the decision of the jury. It was therefore a mixed question of law and fact. [93 Mo. App. 605, supra.] The printed schedule time, in the absence of proof that there was in fact another and dif-

ferent time for freight trains between the two points, perhaps would have been conclusive of the matter. The evidence that it was the understanding that the plaintiff's cattle should arrive on the morning market of October 11th was not admissible to prove a contract, as the contract itself was in writing, but it was admissible as evidence tending to establish the time within which special freight trains, starting at a given hour, would arrive in Chicago. The defendant knew that plaintiff's cattle were fat and that it was desirable to get them on the morning market of the next day after shipment, and in order that they might so arrive they were placed in the special train which, under ordinary circumstances, would have transported them to Chicago in the usual time for such trains and have enabled plaintiff to put them on said morning market. As has been said, no sufficient cause has been assigned why the shipment was not completed in time. The block system in use on defendant's railroad from Decatur does not account for the delay, either in starting from said last-named point or the after-movement of trains on defendant's railroad.

It is further contended that as the plaintiff, for the purpose of securing the rate of freight named in the contract, valued his animals at $50 per head, and agreed "in case of loss or injury to said live stock the liability of the carrier or carriers shall not exceed the above amount per head," he ought not to recover, as he in fact received on the market $71 per head for the same. "A common carrier by a fair contract or sufficient consideration may limit its common-law liability and the recitals of such limitations in the contract are prima facie evidence thereof, which, without further evidence, becomes conclusive." [Wyrick v. Railroad, 74 Mo. App. 406; Kellerman v. Railroad, 136 Mo. 177.] But as there was no evidence that the rate charged was a reduced rate, there was no consideration for the limitation in said contract of defendant's liability. [Kellerman v. Railroad, supra; McFadden v. Railroad, 92 Mo. 343; Du-

venick v. Railroad, 57 Mo. App. 550.] There are many other cases to the same effect.

The court was right in refusing to admit the testimony of said Knight as to freight rates on file with the Interstate Commerce Commission, because it was of a secondary nature. A copy of such rates on file with said commission was the best evidence. This was within the power of defendant to produce. In the light of the evidence we cannot see that the interstate commerce law has anything to do with the case.

All the plaintiff's instructions seem to embody correct propositions of law and when taken in connection with those given by the court on its own motion the issues were fully and fairly presented to the jury. Defendant's instructions, except those given, were properly refused as they were not in harmony with this opinion.

Cause affirmed. All concur.