E. J. HEISEL, Appellee, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY et al., Appellants.

CARRIERS: Carriage of Live Stock—Delay by Initial Carrier. In an action by shipper for damage to shipment of horses, due to delay, against the initial and connecting carriers, where the negligence of the initial carrier contributed to the delay, although the greater part of delay was on the line of the connecting carrier, it could not be held, as a matter of law, that there was no liability on the part of the initial carrier.

CARRIERS: Carriage of Live Stock—Twenty-Eight Hour Law— Evidence. Where an initial carrier had in its possession a shipment of horses less than 28 hours, it was error to submit to the

jury, as against it, the issue of negligence in not unloading the shipment as required under the 28-hour law.

CARRIERS: Carriage of Live Stock—Shipping Contract—With Reasonable Dispatch—Evidence. Where the shipping contract provided that the carrier was not required to transport shipment of horses on any particular train, or for any particular market, or otherwise than with *reasonable dispatch*, the statement of the carrier's agent as to the time when the shipment would reach its destination, not offered or admitted as tending to show any *other contract*, was competent and material, as bearing upon the question whether the shipment had been carried *with reasonable* dispatch, and was not inadmissible as tending to show a promise of special facilities, or as varying the terms of a written contract.

TRIAL: Instructions—Damages to Shipment of Horses—Province of Jury. An instruction, in action for damages to shipment of horses, as to damages, *based upon the fair market value*, held proper, and not as making the evidence introduced conclusive on the jury.

APPEAL AND ERROR: Exclusion of Question—Failure to Show What Answer Would Have Been. Where the records fail to show what the answer to a disallowed question would have been, no error is presented on appeal.

CARRIERS: Carriage of Live Stock—Twenty-Eight Hour Law—Duty Not Dependent on Demand of Caretaker. The duty of the carrier to unload a shipment of live stock under the 28-hour law is not in any way affected by the fact that the caretaker with the horses fails to demand that they be unloaded.

CARRIERS: Carriage of Live Stock—Knowledge of Time in Carriage over Other Line—Carrying with Due Dispatch. Where the connecting carrier, to whom a shipment of horses was transferred by an initial carrier, knew, at the time of their delivery to it, that the shipment had been in the course of carriage for 24 hours, it should have realized that reasonable care for the carriage over the remainder of the route required that the car be picked up and forwarded with all due dispatch.

CARRIERS: Carriage of Live Stock—Delay in Shipment—Sufficiency of Evidence. Evidence reviewed, and held sufficient to sustain finding that delay of connecting carrier was proximate cause of injury to horses, in action for damages due to delay in shipment of horses.

*Appeal from Mahaska District Court.*—J. F. TALBOTT, Judge.

MARCH 21, 1919.

ACTION at law to recover damages on account of alleged negligence in the transportation of freight. Judgment for plaintiff, and defendants appeal.—*Reversed in part; affirmed in part.*

*F. W. Sargent* and *Burrell & Devitt,* for appellants.

*McCoy & McCoy* and *S. V. Reynolds,* for appellee.

WEAVER, J.—The plaintiff is a dealer in horses, at Fremont, Mahaska County, Iowa, a station on the line of the Minneapolis & St. Louis Railroad Company, a common carrier. The Chicago, Rock Island & Pacific is also a common carrier, on whose line in Kossuth County is the station of Titonka. At the time now in question, the property and business of the last-named company were in the charge and control of a receiver, Jacob M. Dickinson. For convenient reference in this opinion, the last above-named carrier will be spoken of as the "Rock Island Company," and the other, as the "M. & St. L." At 7:00 o'clock A. M. of October 22, 1915, plaintiff delivered to the Rock Island Company at Titonka six stallions, to be transported to Fremont. The route contemplated and followed was over the Rock Island from Titonka to a connection with the M. & St. L. at Abbott Junction, and thence over the latter road to Fremont, a distance of 189 miles. The car arrived at Fremont at 3:20 P. M., of October 24, 1915, and the horses were delivered to plaintiff at 5 P. M. of that day, making a period of 58 hours between the beginning of the journey and the delivery at the destination, during which time the carrier did not unload the horses for rest, water, or feeding.

On delivery of the animals at Fremont, and the pay-

ment of charges, the agent of the M. and St. L. at Fremont receipted the freight bill in the following form:

"Received payment for the company .........191....
Total $40.55. Badly delayed in transit.

"J. A. Page, Agent.

"Per J. A. P., Cashier."

It appears without substantial dispute that, when received at Fremont, the horses all appeared stiff and worn; that one was then sick, and died within a day or two; and that another developed pneumonia, and was under treatment for a considerable period. Thereafter, plaintiff gave to each of the defendants written notice of his demand for damages which he alleged he had sustained by reason of the unreasonable delay in the transportation of his horses and the failure of the said carrier to unload the horses, as provided by law. After some ineffectual effort at an adjustment of the claim, the plaintiff brought his action at law, March 17, 1916.

In his petition, he sets forth the fact of the shipment, and alleges that the usual time required for the transportation did not exceed 15 hours; that, in disregard of the carrier's duty in this respect, the trip was not completed for a period of nearly 60 hours; and that in violation of their statutory obligations not to keep the horses confined in the car more than 28 hours at a time without unloading for rest, defendants did not unload them at any time during said transportation; and that, as a result of such negligence and violation of law, plaintiff sustained damages to the amount of $1,500, for which he demands a recovery.

The defendants deny the allegations of the petition, set up the written contract for the shipment, and allege their own compliance therewith in all respects. They further plead that a caretaker employed by the plaintiff accompanied the shipment, and that, if the horses were damaged in

transit, it was due to his fault, and not to that of the defendants.

There was a trial to a jury, and a verdict returned for the plaintiff for $1,350.

As the liability of the several defendants upon the claim asserted by the plaintiff is not necessarily identical or co-extensive, we shall consider the issues separately.

I. There is some question raised as to the effect of the receivership upon the liability of the Rock Island Company; but, in view of our conclusion hereinafter stated, we think it unnecessary to pass upon that question. If this company (or its receiver) is to be held liable, it must be because of some failure of duty which is owed to the plaintiff, and not because of any act or omission on the part of the M. & St. L. after the car was delivered into its custody. In other words, to recover from the Rock Island, it must be because of its own independent negligence, or because from its negligence, in combination with the negligence of its codefendant, the alleged injury to the horses was received. It will be observed from the foregoing statement of the issues that plaintiff bases his claim to recovery on two grounds: (1) That there was unreasonable delay in the transportation; and (2) that the horses were confined in the car more than 28 hours, without being unloaded for rest, as provided by statute.

The trial court submitted both issues to the jury, as against both defendants. The verdict was general in form against both. The Rock Island Company insists that the evidence is, as a matter of law, insufficient to charge it with responsibility for the delay in the transportation or the retention of the horses in the car for more than 28 hours.

So far as relates to the delay above, it is accepted without dispute that the train from Titonka was at least two hours behind its scheduled time in arriving at Abbott Junction, where the car was delivered to the M. & St. L. It was

due at that point at 7:05 A. M., in time for the car to have been taken up by a freight train due to pass the junction south on the M. & St. L. at 7:40 A. M., and to reach Marshalltown at 10:45 A. M., in time for a connection there which would land the shipment at Fremont during the afternoon of the same day.

That there was an unreasonable delay in the transportation from Titonka to Fremont is scarcely open to doubt, and there was evidence from which the jury could properly find that the failure of the Rock Island to deliver the shipment to the M. & St. L. on time contributed thereto. It follows, therefore, that the court could not properly hold, as a matter of law, that the Rock Island incurred no liability for the injury resulting from the delay, although the greater part of such delay was suffered on the line of the other defendant.

1. CARRIERS: carriage of live stock: delay by initial carrier.

But when we take up the Rock Island's further objection, that the court erred in submitting to the jury the question of that company's liability for the confinement of the horses in the car for more than 28 hours, without unloading them for rest, the appellee's case is much less clear. As we have seen, the car was taken up by this company at Titonka at 7:00 A. M. of October 22d, and was due at Abbott Junction at 7:05 A. M. of October 23d, an interval of but 24 hours and 5 minutes. It was, in fact, placed upon the M. & St. L.'s transfer track at 9:10 A. M., making the entire time during which the shipment was in the hands of the Rock Island, 26 hours and 10 minutes. About an hour after it was placed on the transfer, an M. & St. L. train, arriving from the north, hitched onto the car in question, moved it about, but finally went on, leaving it at the junction. From all this, it seems certain that the entire period during which the car of horses was actually

2. CARRIERS: carriage of live stock: twenty-eight hour law: evidence.

or constructively in the possession of the Rock Island did
not exceed 28 hours.  It must be said, therefore, that there
is no evidence of a violation by this company of the statute
prescribing that limit to the carriage of live stock without
unloading; and this issue, as against it, should not have
been submitted to the jury.

II.   The shipping contract provides that the carrier
does not agree to transport the shipment on any particu-
lar train, or in time for any particular market, or otherwise
than with reasonable dispatch.  On the trial
below, the plaintiff was permitted to show,
over the defendant's objections, that, in ap-
plying to the station agent at Titonka, to
arrange for the shipment of the horses, he
inquired of the agent of the time when the horses would ar-
rive at Fremont, and the agent informed him that, if ship-
ped by way of Abbott Crossing, they would reach their des-
tination on the morning of October 23d.  Error is assigned
upon admission of this evidence, as being in violation of the
law which prohibits the furnishing of extra or special facili-
ties to one shipper, which are not extended to shippers us-
ually; also as tending to vary the terms of the written con-
tract, which provides, as above stated, that the carrier did
not undertake to transport the shipment by any particu-
lar train or for any particular market.

The objection is not well taken.  The evidence was not
offered or admitted as tending to show any other contract
than the one embodied in the writing.  While the carrier
did not undertake to carry this shipment by any particular
or designated train, or in time for any particular market, it
did undertake to transport it with "reasonable dispatch."
Indeed, had the writing not expressed it, that obligation
would still be implied, as a matter of law.  Failure, if any,
to observe such obligations was negligence, and testimony
of statements and representations of the carrier to the

*(Margin note: 3. CARRIERS: carriage of live stock: shipping contract: with reasonable dispatch: evidence.)*

shipper as to the time required for the performance of the duty it assumed, was competent and material evidence on the issue of negligence. 10 Corpus Juris, Section 434, p. 302; *Missouri, K. & T. R. Co. v. Stanfield,* 40 Tex. Civ. App. 385 (90 S. W. 517); *Sloop v. Wabash R. Co.,* 117 Mo. App. 204 (84 S. W. 111).

It also has some bearing on the situation in this particular case that the shipping contract was not reduced to writing or signed and delivered until after the shipment had been delivered, and was in its course of transit and at the town of Garner. The testimony objected to was not obnoxious to the rule against parol evidence to change or add to the terms of a written contract, nor does it in the least tend to show any undertaking or promise to extend to plaintiff any special favor, facility, or advantage not accorded to the public, or shippers in general.

III. Error is assigned upon the giving of Paragraph 19 of the court's charge to the jury, reading as follows:

"If you find for the plaintiff, and that he is entitled to recover for the loss of the stallion that died, you will allow him, as damages therefor, the reasonable, fair market value of said stallion, as shown by the evidence; and if you find that he is entitled to recover for the injury to the other stallions, you will allow him as damages the differences between the reasonable, fair value of said stallions in the condition they were in immediately after transportation, as shown by evidence, and the reasonable, fair value of said stallions as it would have been had they been transported and delivered to plaintiff without negligence on the part of the defendants in transportation, as shown by the evidence."

4. TRIAL: instructions: damages to shipment of horses: province of jury.

The exception taken to this instruction is that it "makes the evidence of value conclusive on the jury," and is, therefore, inconsistent with our holding in *Fowle v. Par-*

*sons,* 160 Iowa 454, and others of that class, where it is said, in substance, that testimony as to values and expert testimony generally upon such subjects is not necessarily conclusive, but that jurors, in disposing of the question, may exercise their judgments as reasonable men, in the light of common knowledge and the common experiences of mankind.

The objection indicates a lack of appreciation of the rule so invoked, or a desire that we shall extend it far beyond what any authority has yet held. No precedent cited gives any support to the idea that, without any evidence on the subject, the jury may proceed to assess values or damages, guided only by the inner light of its own judgment; but rather, the question of values being, in the last analysis, a question of opinion and judgment only, the jurors are not required to accept the estimate of any one or more witnesses as conclusive, but, taking into consideration such testimony, and all of it, and giving it that weight and influence, much or little, to which they believe it fairly entitled, under all the proved facts and circumstances, they may therefrom,—that is, from the evidence in the case,— reach that conclusion which best satisfies their own judgments, whether it does or does not coincide with the views expressed by any particular witness. In every case, a proper verdict upon any disputed question of fact is one which depends upon the evidence for its justification. The instruction here challenged is in strict accord with this view, and the objection thereto cannot be sustained.

Had the appellant desired the court to go further, and give more particular attention to the rule applied in the *Fowle* case, supra, and in *Moore v. Chicago, R. I. & P. R. Co.,* 151 Iowa 353, 360, the court might very properly have granted the request; but the verdict as it stands shows no error.

The instruction as given does not, as counsel argues,

deprive the jury of power to pass on the weight of such opinion evidence, nor does it, in substance or effect, tell the jury that the evidence of value was conclusive.

.    IV.  Upon his cross-examination, the plaintiff was asked what he paid for the stallions at Titonka, and upon plaintiff's objection, the evidence was excluded.  There is nothing in the record to indicate what the witness would have answered, had he been permitted to speak, nor did appellants show or offer to show what they expected to develop or disclose by the evidence in this respect.  While the court might very well

5. APPEAL AND ERROR : exclusion of question : failure to show what answer would have been.

have overruled the objection and allowed the witness to answer, it is thoroughly well settled that a record such as here made shows no reversible error.  *Arnold v. Livingston,* 155 Iowa 601, 606;  *Porter v. Moles,* 151 Iowa 279, 281;  *Gittings v. Duncan,* 164 Iowa 373;  *Woods Co. v. Chicago, R. I. & P. R. Co.,* 161 Iowa 639, 641.

V.  It appears affirmatively that neither defendant had any facility or convenience for unloading and resting stock at Abbott Crossing.  There is no showing that, after taking the car into its possession, the M. & St. L., by its agents or trainmen, put the car anywhere into position to be unloaded until it finally reached Fremont, or that they or any of them at any time offered or proposed to the caretaker so to do.  The

6. CARRIERS :· carriage of live stock : twenty-eight hour law : duty not dependent on demand ·of caretaker.

plaintiff himself was not with the shipment, and there is no evidence that he requested or directed the carriers to ignore the provisions of the statute, or that he authorized the caretaker so to do, or that the caretaker did, in fact, request or direct such course of action by the carrier.  The most that is urged in argument is that the caretaker did not demand that the horses be unloaded and rested, and because of this failure so to do, the plaintiff cannot

complain of the negligence of the carriers. The duty of the carrier to obey the statute was not at all dependent on a demand by the plaintiff's servant. Plaintiff had the right, in delivering the shipment to the carrier, to assume that the carrier would obey the law. Even an agreement between the caretaker and the carrier to disobey the law would not affect the plaintiff's rights, unless it should appear that the caretaker was acting by his authority; the carrier cannot be allowed to escape liability for its disobedience of a mandatory law because of a failure to protest by the servant of one who suffers injury therefrom. Furthermore, the court did instruct the jury that the defendant was not bound to unload the horses if they were carried in a car that afforded them proper· space and oppportunity to rest.

VI.   But, passing the question of negligence in failing to unload the horses *en route,* the negligence of the M. & St. L. in failure to forward the shipment with reasonable diligence and promptness is so clearly demonstrated that other issues become of secondary importance. That there was such a failure was distinctly recognized by the carrier's own notation on its freight bill "Badly delayed in transit." Abbott Crossing and Fremont are, as we have said, both on the line of the M. & St. L., and but 113 miles apart; and from the time the car was delivered to this company, on the morning of October 23d, to the delivery of the horses to the plaintiff, late in the afternoon of October 24th, covers a period of some 32 hours. There is evidence from which the jury could find that, while the car was left standing on the defendant's side track at Abbott Junction, two freight trains going south passed it by, and it was not until the third train picked it up, after two o'clock P. M., that it was started on its way; and even then, it was about 25 hours before it arrived at Fremont, and 27 hours before the

7. CARRIERS : carriage of live stock : knowledge of time in carriage over other line : carrying with due dispatch.

horses were delivered to the plaintiff. That a prompter transportation and earlier delivery were easily practicable, without any departure from the regular train schedule, is shown by the specific admission of record, which reads as follows:

"It is conceded by the parties that, on October 22, 23, and 24, 1915, the M. & St. L. freight train No. 96, which arrives at Abbott Crossing between 11:30 and 11:55 A. M., arriving in Marshalltown, Iowa, at 3:00 P. M., arrives in Oskaloosa at 7:05 P. M., leaves Oskaloosa at 8:30 P. M., arriving in Fremont at 9:10 P. M., the same day."

Transportation even upon this schedule should have avoided at least 18 hours of the delay. In considering what reasonable diligence required at the appellant's hands, the fact that these horses had been 24 hours or more in course of transportation when they were delivered to the M. & St. L. at the junction is not to be overlooked. Not that the M. & St. L. would be chargeable with negligence because of any delay on the part of the Rock Island Company; but the former company, knowing, as it did, that the horses had been in the course of carriage for an entire day of 24 hours or more, must also have realized, or should have realized, that, to some extent, the animals were already travel worn, and that reasonable care for their safe carriage over the remainder of the route required that the car be picked up and forwarded to its destination with all due dispatch. In saying that the M. & St. L. received the horses, knowing that they had already been carried from Titonka, we do not indulge in any mere presumption; for on the freight bill issued by the defendant, on which is noted, "Badly delayed in transit," there is a memorandum showing the day and hour when the car was loaded at Titonka, as well as the day and the hour when it was transferred at the junction.

That there was negligent delay on the part of the M. &

St. L. is too clear to admit of serious debate, and there is ample support for the jury's finding that such delay was the proximate cause of the injury to the horses of which the plaintiff complains.

8. CARRIERS: carriage of live stock: delay in shipment: sufficiency of evidence.

Other objections argued by counsel, as far as they have any foundation on the subject, are controlled by the conclusion we have already announced.

As against the defendant the Minneapolis & Saint Louis Railroad Company, we find there was no prejudicial error, and the judgment from which it appeals must be affirmed.

The judgment of the district court against the Rock Island Company and Dickinson, Receiver, will be reversed, and costs of such appeal will be taxed to the appellee. As against the Minneapolis & Saint Louis Railroad Company, the judgment is affirmed, and costs will be taxed to appellant.—*Reversed in part; affirmed in part.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.