## IN RE ESTATE OF J. D. STRYKER.

**WILLS:** Testamentary Capacity—Senile Dementia. Principles reaffirmed: (1) That senile dementia does not necessarily render a party incapable of making a will; and (2) that a party has testamentary capacity if he *intelligently understands* (a) the nature of the instrument executed, (b) the nature and extent of his estate, (c) the natural objects of his bounty, and (d) the distribution which he wishes to make.

*Appeal from Wright District Court.*—H. E. FRY, Judge.

MARCH 15, 1921.

WILL contest. Appeal from verdict and judgment thereon, admitting will to probate.—*Affirmed*.

*Birdsall, McGrath & Archerd,* for proponents.

*Sylvester Flynn, Robert Healy,* and *Lovrein & Lovrein,* for contestants.

PER CURIAM.—J. D. Stryker died September 7, 1918, at the age of 69 years, a bachelor. His father and mother had died

about 20 years before. Before the death of the parents, Mrs. C. W. Orr married her present husband, and they, together with J. D. Stryker, lived as one family on the old Stryker homestead. When the parents died, J. D. Stryker became the owner of the homestead, and C. W. Orr and his wife rented the land from J. D. Stryker. Ever after the death of his parents, J. D. Stryker made his home with his sister, Mrs. C. W. Orr, and her husband. In addition to Mrs. C. W. Orr, there were five sisters and one brother, of whom two sisters only were living at the time the will in question was made. The living sisters, besides Mrs. C. W. Orr, were Mrs. Thomas Orr and Mrs. Emma Spangler. The deceased sisters were Mrs. Lovina Teeters and Mrs. Effie Johnson, and the dead brother was John Stryker. Mrs. Lovina Teeters moved to Missouri about the year 1877. Her brother, J. D. Stryker, never made a visit to her after that time, and she never visited him. She died about the year 1892. In 1910, one of her sons, W. A. Teeters, moved to Laurens, Iowa, and J. D. Stryker visited him there, two or three times, and Mr. Teeters and some members of the family visited Mr. Stryker twice.

Mrs. Effie Johnson died September 5, 1909. Her children saw their uncle, J. D. Stryker, only occasionally. J. D. Stryker's relations with his brother John, who owned a neighboring farm, were pleasant, up to the time of John's death, in 1917. His relations with Mrs. Thomas Orr were always pleasant. Mrs. Emma Spangler visited her brother J. D. Stryker three times during the last three years of his life, and he was at her place once, which was in the year 1916.

The will was made on May 5, 1916, about two years and four months before his death. At the time of his death, Stryker had personal property of the value of $19,470.95. He owned 270 acres of land, situated in Wright County, which was free of incumbrance, except taxes and drainage assessment in the amount of about $1,200. The land was worth somewhere in the neighborhood of $200 an acre, and the total estate amounted to approximately $72,000. In his will, Stryker gave his sister Mrs. C. W. Orr 90 acres of land; to C. W. Orr, his sister's husband, he gave 80 acres of land; to Miles Orr, his sister's son, he gave 100 acres of land. He gave his sister Mrs. C. W. Orr and her

husband each $3,000 in cash; to Lovina Luke, daughter of Mrs. C. W. Orr, he gave $1,000; to Amy Spires, daughter of Mrs. C. W. Orr, $1,000; to Roxina Orr, daughter of Mrs. C. W. Orr, $500; to Miles Orr, son of Mrs. C. W. Orr, he gave $1,500; to his sister Mrs. Thos. Orr and her husband, he gave $3,000; to the five children of his deceased sister Mrs. Johnson, he bequeathed to Albert Johnson $1,000, and to the other four $500 each. Martin Hirt, a disinterested friend, was named as executor in the will.

The proponents, appellees here, being the members of the C. W. Orr family, tendered the will for probate. The contestants, appellants, are the heirs of J. D. Stryker other than the C. W. Orr family.

Contestants, in their objections to the probate of the will, allege that, at the time the instrument was made, and for years previous thereto, J. D. Stryker was of unsound mind, suffering from a general mental derangement, due to senile dementia and other mental ailments; and that the execution of the instrument was procured by undue influence of C. W. Orr, Lillian Orr, Roxine Orr, Miles Orr, Amy Spires, Lovina Luke, or one or more of them, in that, for 30 years prior to his death, decedent had lived in the same house with Lillian Orr and C. W. Orr and their children, and had implicit confidence in them, and then was in a greatly weakened mental condition, due to senile dementia and other causes; and that one or more of said persons wrongfully caused the said Stryker to sign the said instrument wherein they were named as the chief beneficiaries.

At the close of the evidence for contestants, the court withdrew from the consideration of the jury the issue of undue influence. The case went to the jury on the question of testamentary capacity of the testator, and the jury found that the testator was of sound mind at the time he executed the will.

J. D. Stryker was adjudged insane on August 19, 1918, and was confined in the hospital for the insane at Cherokee, and died in that hospital on September 7th following. It is the position of proponents that insanity first manifested itself in the summer of 1918, and that, before that time, Stryker was sound in mind. The contestants claim that, for four or five years immediately preceding his commitment to the hospital, Stryker had

the well-known symptoms of senile dementia, and was incapacitated to make a will.

At the close of contestants' evidence, the issue of undue influence was withdrawn from the jury, on motion of proponents. Contestants claim that the issue of undue influence was supported by sufficient evidence, and that it was error to withdraw the same from the consideration of the jury.

It would serve no useful purpose to set out the testimony bearing on that question. We have examined the record carefully, and think the court did not err in withdrawing the issue of undue influence from the jury. There was not even a scintilla of evidence to show attempt to exert influence on Stryker by any of the beneficiaries with respect to the will.

Contestants complain of Instruction 13, given by the court; that, in Instruction 13, the court invaded the province of the jury, and reflected upon and destroyed the evidence of contestants' physician witnesses, respecting · their examinations and observations of the decedent and their knowledge of the disease with which he was afflicted. This assignment of error is without merit. The instruction is a correct statement of the law, and is a fair submission of the matters involved, and it is the usual instruction given. The instruction does not invade the province of the jury or reflect upon the evidence of contestants, but states the law recognized by this court. *Moore v. Chicago, R. I. & P. R. Co.,* 151 Iowa 353, 359; *Arndt v. Hosford,* 82 Iowa 499; *Lang v. Marshalltown L. P. & R. Co.,* 166 Iowa 548, 554. We deem it unnecessary to set out the instruction. A similar instruction was approved in *Moore v. Chicago, R. I. & P. R. Co.,* supra.

Contestants complaint of Instruction 9, that the court failed to submit their side of the proposition. In this instruction the court stated the claim of contestants, that, at the time of the execution of the will, Stryker was afflicted with senile dementia, and that, by reason thereof, he was incompetent to make a valid will, and submitted it to the jury to determine the facts. The jury was told that, if it found that the testator was afflicted with senile dementia at the time of making the will, it did not necessarily mean that he was, by reason thereof, mentally incapable of making a valid will; that, if it found that the disease so affected his mind at the time the will was executed that he did

not and could not intelligently understand the nature of the instrument he executed, the nature and extent of his estate, the natural objects of his bounty, and the distribution he wished to make of his property, then he was mentally incompetent to make a valid will. The instruction fairly stated the proposition of fact involved and the law applicable, applying the proper test of mental capacity to make a valid will. *Perkins v. Perkins,* 116 Iowa 253, 260.

Contestants complain that, in Instruction 11, the court emphasized nonexpert evidence favorable to proponents, and minimized the weight of like evidence offered by contestants. We refrain from setting forth the instruction. It is sufficient to say that the criticism is without merit.

Error is assigned because, as contestants claim, H. M. Hirt, who was named as executor in the will, was permitted to testify to personal transactions with decedent testator, over objections made under Code Section 4604. We think the testimony elicited from Hirt was not incompetent under Section 4604, but we will not discuss the matter further. The contestants are not in a position to complain of the testimony of Hirt, for his testimony was stricken.

The question of the mental capacity of J. D. Stryker to make the will was submitted to the jury, under proper instructions.

We find no reason to disturb the judgment of the court admitting the will to probate, and the judgment below is—*Affirmed.*