A. A. Moore, Appellee, v. The Chicago, Rock Island & Pacific Railway Company, Appellant.

**Railroads:** CARRIAGE OF LIVE STOCK: DUE CARE: BURDEN OF PROOF: EVIDENCE. A railway company upon receiving for transportation live stock then in good condition has the burden of showing that its failure to deliver the same in that condition was due to inevitable accident, or other defects inhering in the stock itself, and not from a want of due care on its part. In this action for the loss of sheep while in transit the evidence is held to justify a finding that the railway company failed to exercise due care.

**Same:** CONTRIBUTORY NEGLIGENCE. The overloading of a car of stock for transportation will not relieve the carrier from liability for its failure to unload the same within a reasonable length of time for feed and rest.

**Same:** EXCLUSION OF EVIDENCE: PREJUDICE. Where it was shown that a carload of stock arrived at a feeding station before dark, a fact of which the court will take judicial notice where the time of arrival is shown, and that no attempt was made to unload the car until one o'clock in the morning, a refusal to receive evidence of the difficulty of unloading stock in the night-time was not prejudicial.

**Same:** EVIDENCE: CONCLUSION. The statement of a yardmaster in charge of cars and the making up of trains, that he thought a

double decked car would hold about two hundred sheep was not objectionable as a conclusion.

**Expert evidence:** WEIGHT: INSTRUCTION.  There may be cases where issues turn solely upon scientific or technical questions concerning which ordinary persons have no adequate conception, and where the testimony upon such an issue is wholly of an expert character and without dispute the jury may be bound thereby; but usually expert evidence like that of any other witness is to be considered and accorded such weight as the jury may think it entitled to under all the developed facts and circumstances and the common knowledge and experience of mankind.

**New trial:** ARGUMENT OF COUNSEL.  Counsel in argument to the jury may properly draw conclusions from the testimony and give them to the jury, even though his logic may be at fault or the opinions expressed by him unjust; and so long as he confines himself to the record and does not abuse his right by appealing to passion and prejudice the court will not interfere.

**Trial:** CONTINUANCE: TAXATION OF COSTS.  The court can tax against a party to whom a continuance of the cause is granted only such costs as are taxable under the statute.

. *Appeal from Franklin District Court.*—Hon. R. M. Wright, Judge.

Friday, May 12, 1911.

Action to recover damages for the alleged loss of plaintiff's sheep while in the possession of the defendant as a common carrier.  Verdict and judgment for plaintiff and defendant appeals.  *Modified* and *affirmed*.

*Carroll Wright, J. L. Parrish, J. H. Johnson* and *C. F. Johnson,* for appellant.

*E. P. Andrews,* for appellee.

Weaver, J.—On September 12, 1908, plaintiff purchased three hundred and seven sheep from Hill & Son, a firm of dealers or commission men at South Omaha, Neb.,

for shipment to his farm or place of business at Elkton, S. D. When the purchase was made the sheep were taken from the pens of the seller and turned over to the stock-yards company, through which such shipments are made from South Omaha, the consignment being made by Hill & Son, to be shipped over the defendant road to Elkton. The delivery to the stockyards company was made about 4 o'clock p. m. of September 12. They were not loaded upon the car until 10:40 o'clock a. m. of September 14, having meanwhile been "dipped" in obedience to some regulation imposed by federal law upon such shipments. The car was hauled from Omaha east to Valley Junction, Iowa; thence north to Sibley, Iowa, where the sheep were transferred to another car, which was hauled westward to Elkton, S. D., arriving there at 5:50 o'clock p. m. of September 17, 1908. Many of the sheep died en route, and but eighty-five were delivered alive to plaintiff. Alleging facts as aforesaid, the plaintiff sues to recover damages. The defendant's answer is in substance a general denial of all the allegations of the petition. The plaintiff's evidence was to the effect that the sheep, if safely delivered at Elkton, would have been worth $3.50 per head at that place. The verdict in his favor was for $256.65.

I. While many exceptions are presented and argued, the one most prominently asserted goes to the sufficiency of the evidence to sustain the verdict, and to that we give first attention. Plaintiff's testimony tended to show a delivery of the sheep in good condition. He conceded, as a witness, that they were thin in flesh, having been recently separated from their lambs, but says "they were a good, ordinary, healthy bunch of ewes." In this he is corroborated by other witness. Assuming, therefore, that the jury would be justified in believing this testimony, the burden was upon the defendant as a common carrier to show by a preponderance of the evidence that its failure

1. RAILROADS: carriage of live stock: due care: burden of proof: evidence.

to deliver the sheep safely at Elkton was due to some inevitable accident, or disease, weakness, or other defect inhering or existing in them, and not chargeable to any want of due care on its part. *McCoy v. Railroad Co.*, 44 Iowa, 424; *Kinnick v. Railroad Co.*, 69 Iowa, 665; *Swiney v. Express Co.*, 144 Iowa, 342; *Railroad Co. v. Williams*, 61 Neb. 608 (85 N. W. 832, 55 L. R. A. 289); *Railroad Co. v. Fox*, 113 Ill. App. 180; *Railroad Co. v. Woodard*, 164 Ind. 360 (72 N. E. 558, 73 N. E. 810); *Cooper v. Railroad Co.*, 110 Ga. 659 (36 S. E. 240); *Express v. Ashford*, 126 Ala. 591 (28 South. 732).

The question before us on this branch of the case is therefore whether the defense upon which appellant relies has been so clearly and satisfactorily established as to leave no room for a different conclusion upon the part of intelligent, fair-minded jurors. Such is not our conclusion from the record. It is true that plaintiff's claim that the sheep were in reasonably good condition when delivered is vigorously contested by the defendant, and it offers a strong array of evidence tending to show that the animals were the culled remnant of a larger flock from which the more valuable portion had been before selected and sold; that from four to six died in the yard before the car was loaded; that on arrival at Valley Junction more were found dead; that a disease of some kind seemed to develop among them; that others were found dead on arrival at Sibley, and still others died between Sibley and Elkton. It would appear from the record that this showing did convince the jury that the loss of a portion of the sheep was chargeable to causes for which a carrier is not held responsible, for the testimony is without substantial dispute that had the sheep been delivered at Elkton in good order, they would have been worth $3.50 per head. According to his showing, plaintiff lost two hundred and twenty-two sheep, and defendant's showing makes the number two hundred and sixteen, but the verdict returned of

$256.65 indicates that the jury found the defendant's liability did not extend to the entire loss.

As to the circumstances attending the transportation and care of the shipment, it is shown that the train in which the sheep were hauled to Valley Junction, where they were to be unloaded, fed, and watered, arrived there about 7 o'clock p. m. of September 14, but they were permitted to remain in the car all night. The sheep were all in one double-decked car, and the weather quite warm. When unloaded in the morning, twenty were found dead, and others showed signs of weakness. They remained in the yard until evening, when they were reloaded, and at 4:10 o'clock a. m. next day were started on the journey to Sibley, the next feeding point, where they arrived at 5:30 o'clock p. m. While in the yard at Valley Junction, several witnesses say the sheep, or many of them, appeared to be suffering from dysentery or other disease of the bowels, and several died there. At Sibley many others were found dead. The remnant was unloaded, fed, and transferred to another car. The trip thence to Elkton was accomplished in about four hours. It is the claim of plaintiff that the defendant was negligent in keeping the crowded car, without unloading, on its tracks at Valley Junction an unreasonable length of time, and that the jury may well have believed that the disease, if any, of which the sheep died was developed by this treatment, or if the sheep were in any manner affected by the disease when shipped that such treatment operated to aggravate its effect, and the mortality resulting therefrom. We are unable to say that this is not an allowable inference from the facts shown.

If the car was overloaded or overcrowded, and plaintiff be held to have no cause of action on that account, by reason of contributory negligence in respect thereto, it would not relieve the defendant from liability for its negligence, if any, in keeping the car, without unloading,

·an unreasonable length of time at the feeding station.

**2. Same: contributory negligence.**

Other circumstances are relied upon by plaintiff in rebuttal of the claim that the defense has been established as a matter of law, but we will not prolong the opinion to discuss them in detail. It is enough to say that, in view of the entire case as disclosed by the record, the trial court did not err in denying the motion for a directed verdict.

II.   Complaint is made that the court ruled out evidence as to the difficulty of unloading sheep in the night-

**3. Same: exclusion of evidence: prejudice.**

time.   While there may be circumstances under which the evidence offered would be material and competent, we are of the opinion there was no error in the ruling.

The train arrived at Valley Junction at 7 o'clock p. m. on September 14, a time of the year when we will take judicial notice that the darkness of night had scarcely set in.   Instead of promptly placing the car in position for unloading, it was not moved to the sheep pens until 1 o'clock in the morning, and it was not until the car was so placed that any attempt was made to unload it, and the alleged difficulty encountered.   There was no prejudice to the defendant in rejecting the evidence.

It appears, moreover, that while testimony of this nature by some witnesses was ruled out defendant succeeded in getting it before the jury in evidence given by other witnesses.

Defendant's yardmaster, Heggenberger, having testified to the arrival of the sheep at Valley Junction and their condition, and that he had charge of the hauling of

**4. Same: evidence: conclusion.**

cars and the making up of trains, was asked how many sheep a double-decked car would ordinarily hold, and, having answered it would depend upon the size of the sheep, was permitted to say that he had never loaded sheep, but thought "about two hundred, or about that."   This was objected to on

the sole ground that the witness had not shown himself competent to answer, and that the testimony called for was a mere matter of opinion or conclusion. Counsel now argue their exception to this evidence on the theory that it was not proper cross-examination. No such objection was raised below, and we think the testimony was not fairly open to the objection which was in fact made.

III. Two witnesses, veterinary surgeons, testified on behalf of the defendant that they were called to the Valley Junction yards on September 15, 1908, to examine a lot of sheep. They described the appearance of the sick animals and the symptoms manifested and the conditions of the internal organs of some of the carcasses, and gave it as their opinion that the sheep were suffering from "gastral enteritis," or "acute congestion or hyperemia," affecting the functions of the bowels, bladder, and kidneys. The disease, they say, is not contagious, and is "probably" produced by a change of diet.

5. EXPERT EVIDENCE: weight: instruction.

Bearing upon the weight to be given expert evidence, the court instructed the jury as follows: "(10½) Testimony has been given by certain witnesses who, in law, are termed experts, and in this connection I would suggest to you that while in cases such as the one being tried, the law receives the evidence of men, expert in certain lines, as to their opinions derived from their knowledge of particular matters, the ultimate weight which is to be given to the testimony of expert witnesses is a question to be determined by the jury, and there is no rule of law which requires you to surrender your own judgment to that of any person testifying as an expert witness, or to give controlling effect to the opinion of scientific witnesses; in other words, the testimony of an expert, like that of any other witness, is to be received by you and given such weight as you think it is properly entitled to; but you are not bound

·or concluded by the testimony of any witness, expert or other."

Upon this feature of the record we are asked to say that, as plaintiff produced no witnesses to take issue with the defendant's experts, their testimony is to be taken as conclusively establishing the defense, and that there was error in giving the quoted instruction.  We admit, for the purposes of this case, that upon issues which turn solely and entirely upon the answer to some scientific or technical question concerning which the ordinary or unskilled person can have no proper or adequate conception, and where the testimony is wholly of an expert character and without dispute, the jury is bound by it, and the court may control the verdict.  But such cases are by no means usual or common, and in all ordinary cases the rule laid down in the instruction criticised is sound.  *Morrow v. Association,* 125 Iowa, 639; *Arndt v. Hosford,* 82 Iowa, 502; *Aetna Ins. Co. v. Ward,* 140 U. S. 76 (11 Sup. Ct. 720, 35 L. Ed. 371); *Railroad Co. v. Whitney,* 143 Iowa, 516; *Salinger v. Telegraph,* 147 Iowa, 484.

The jury does not sit simply to register the opinion of an expert witness, even though it be undisputed.  It is its own exclusive function to pass upon the fact put in issue.  The testimony of the expert may not be arbitrarily rejected, but, like the evidence of every other witness, it is to be considered by the jurors, who are to accord to it influence, much or little, according as it appeals to their intelligent and impartial minds, in view of all the facts and circumstances developed upon the trial and the common knowledge and experience of mankind.  Nor is the instruction subject to criticism as tending to belittle expert evidence.  On the contrary, the only effect is to prevent the undue exaltation of such evidence, and to place the expert witness on equal footing with all other witnesses, whose testimony must be subjected to the final test of the judgment of the jury.

IV.   Error is assigned upon the alleged misconduct of appellee's counsel in his argument to the jury.   We find no error in this respect.   Counsel has the right to draw conclusions from the testimony and give them to the jury, even though his logic may be at fault, or the opinions expressed by him be unjust.   So long as he does not go outside of the record in a manner from which we may fairly infer prejudice to the other party, and does not abuse his privilege by appealing to prejudice and passion, rather than to reason, the field is his own, and the court should not interfere.   We find nothing in the argument here objected to which seems to be obnoxious to this rule or to call for the drastic remedy of ordering a new trial.

6. New trial: argument of counsel.

V.   At the term at which this action was first tried, plaintiff came from a distant state, and procured the attendance of his counsel and witnesses ready for trial.   Defendant appeared and moved for a continuance on the ground of sickness occurring in the family of one of its counsel, upon whom it had relied to conduct the litigation.   The court granted the motion and taxed defendant the sum of $57.80 to cover costs and expenses incurred by plaintiff in attending with his witnesses upon this term.   Later the amount was reduced by eliminating an item of $3.   Error is assigned upon the refusal of the court to retax the entire amount.   This question was before us in the recent case of *Keller v. Harrison,* 151 Iowa, 320, where it was held erroneous to impose other conditions, upon the granting of a motion for continuance, than the payment of taxable costs.   For reasons indicated in my dissent from that ruling, I incline to the view that power to require the payment of expenses, rendered useless by a continuance asked for on the very eve of trial, as a condition of granting such request, is not only inherent in the court and one sanctioned by universal practice, but is quite essential to the

7. Trial: continuance: taxation of costs.

due administration of justice. However, as the majority of the court sees no sufficient reason for departing from the precedent thus established, it must here be followed, and the objection to the taxation against defendant of expenses other than taxable costs will be sustained accordingly.

There being no reversible error involving the merits of the case, the judgment below (modified as herein directed in the matter of taxation of costs) must be affirmed at the cost of the appellant. *Affirmed.*