McCARTY, Plaintiff, v GREAT CENTRAL MUTUAL
INSURANCE COMPANY, Defendant.

Common Pleas Court, Franklin County.

No. 171,608. Decided December 31, 1947.

Russ Bothwell, Columbus, for plaintiff.
Joseph & McClelland and R. L. Ratchford, for defendant.

## OPINION

By LEACH, J.

This is an action by plaintiff, who is the owner and operator of a dry cleaning business, for a claimed loss sustained by the burglarizing of such establishment, and in which certain customers goods were stolen from the place, against the

defendant Insurance Company, on a policy of burglary insurance. The defendant, by answer, contends that the loss was not contemplated under, nor covered by, the provisions, of the policy, which policy, however, it admits having issued to the plaintiff herein.

A jury was waived and the cause was tried and submitted to the Court on the evidence and upon written briefs.

An insurance policy is a contract and like any other suit upon a contract liability depends upon the terms thereof and the evidence introduced at the trial in support of and to refute the claim made in the petition.

The insurance policy or contract was introduced in evidence, and marked as Plaintiff's Exhibit No. 1.

By the terms of the policy, insofar as is here pertinent, the Insurance Company agreed:

"Point V

"To indemnify the assured for loss of such property by burglary (not money or checks) belonging to assured, for sale on the insured business premises inside place of business or outside as specified in application, not to exceed Two Hundred Fifty Dollars. ($250.00)" * * *

"Burglary—Burglary as defined for the purpose of this policy is the felonious entry into the premises of the assured by actual force and violence when such premises are not open, and the taking and carrying away of such property of assured as is insured by the policy, of which force and violence there shall be visible marks made upon the premises at the place of such entry by tools, explosives, electricity or chemicals."

"Exclusions (Important) The Company shall not be liable for loss: * * * 7. Under Point V, if all openings or exits to place of business are not equipped with substantial doors and windows (not screens or screen doors) and such doors and windows are not closed and locked when place of business is closed."

To the policy was attached two riders on endorsements, the first of which was entitled: "Customers Goods Endorsement," and which, insofar as is here pertinent contained the following provisions:

"For and in consideration of the premium expressed in policy No. 63947 to which this endorsement is attached and is a part thereof, Great Central Mutual Insurance Company hereby agrees with the assured that the coverage under said

policy shall extend to customers' goods in the possession of the insured for the purpose of repairing, remaking, remodeling, renovating, decorating, plating, altering, **cleaning or pressing** or any or all of said purposes, provided, however, the insurance provided by any one point in said policy shall not exceed a sum of money equal to ten times the insured's charge to the customer for the service rendered on such article or articles of customer's property for the loss of which claim is made, and provided further that the maximum liability under this policy is $250.00 and the company's liability for any loss suffered at any one time shall not exceed $250.00 regardless of what point or combination of points of said policy might otherwise be applicable * * *. This endorsement shall become part of said policy but shall not effect same in any way except as herein specifically stated."

The second of said endorsements provided that:

"For and in consideration of an additional premium of $1.00 Great Central Mutual Insurance Company hereby agrees with the assured that the limit of liability under each and every coverage provided in policy No. 63947 and any endorsements thereto unless same are specifically listed: shall be and the same are hereby multiplied by 2 and the maximum liability under said policy is hereby increased to $500.00 * * * This endorsement shall become part of said policy but shall not affect same in any way except as is here specifically stated."

The defendant's liability, of course is measured by the terms of the contract, and, as in any other civil case, the burden of proof was upon the plaintiff to establish its claim of loss and breach of the contract according to its terms.

The burglars entered the place through a transom, and it is claimed by the defendant that the burglars left "no visible marks upon the premises at the place of entry into plaintiff's premises by tools, explosives, electricity or chemicals" as is required by the terms of the policy as a condition of liability in the policy's definition of "Burglary" as covered by the policy.

The plaintiff testified that "On the lower edge of the transom there were fresh marks—apparently made by a screwdriver." An investigator for the Company testified that there were no visible marks on the transom. On consideration of the entire testimony and the method by which the transom was fastened shut, and the fact that the insurance investiga-

tor's testimony, on the whole, on this point, was somewhat in the nature of negative testimony, the Court, after applying the usual tests as to credibility, is of opinion that plaintiff has established by a preponderance of the evidence that there was the mark of a screw-driver which is a "tool", within the meaning of the policy, upon the transom.

The transom, through which the burglar or burglars gained entrance, was hung upon hinges at one end thereof, and the preponderance of the evidence shows that it was fastened shut by a nail driven into the frame surrounding the transom, which nail was bent over the transom itself. As generally and commonly understood a "transom" is a window above a door, or as defined in the Winston Dictionary, "Chiefly in the United States, a window above a door or another window"; and one of the several meanings as given by Websters International Dictionary is "A window over a door." It was fastened shut by a nail as above indicated. Was it therefore, "locked" within the, meaning of the policy? To "lock" is used in our language with many different gradations of meaning, thus one may lock his fingers together. "Lock washers" are used to prevents nuts from becoming unscrewed from bolts. Among the many meanings given by Webster is, "Anything that fastens," and among those given by Winston is: "Any device that fastens." In view of the general rule that—"A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain and ambiguous"— Toms v Ins. Co. 146 Oh St 39,—the Court concludes that the transom window was "locked" within the meaning and for the purposes of the policy.

Coming now to the amount of the recovery that may be adjudged against the defendant and in favor of the plaintiff under the terms of the policy and the evidence offered, it is first to be noted that the indorsement which modified the original policy so as to cover consumer's goods in possession of the insured, as well as the insured's goods covered by the original policy contains a proviso that as to such consumer's goods, "the insurance provided * * * shall not exceed a sum of money equal to ten times the insured's charge to the customer for the service rendered on such article or articles of customers' property for the loss of which claim is made." This amount of coverage is doubled by the second endorsement. All of the loss claimed is for loss of customers' goods in possession of plaintiff at the time of the burglary. The plaintiff

testified that "the reasonable value of the goods stolen was about $500.00—at least $500.00." The adjuster for the company * * * testified that the wife of plaintiff who was in charge of the place of business at the time of the burglary (the plaintiff being sick at home at that time and who was not told of the burglary until the week following) told him, when he was at the place of business investigating said burglary, that the loss was $154.90. This testimony was not rebutted.

Plaintiff's only testimony as to what was stolen, in detail was:

1 Tan ladies Coat—which was in his possession for cleaning and for which his charge therefor was 85 cents—that he replaced the coat at a cost of $39.95.

1 Wool flannel man's robe—in for cleaning and for which his charge was $1.00—that the original cost thereof was about $25.00 and that he paid $25.00 in settlement of the customers' loss.

1 pair new striped trousers, in for alteration, and for which his charge was $1.25; that he paid $14.50 to replace same.

1 Army Officers Australian wool sweater, in for cleaning, for which plaintiff's charge was 45 cents, and that he paid the owner $10.00 in settlement for the said customer's loss. There was no further itemization of goods stolen or service charges therefor. On the basis of the last quoted terms of the policy—the amounts applicable thereto were, as to the ladies coat, $17.00; the man's flannel robe, $20.00; the stripped trousers $14.50—since that amount, while less than twenty times plaintiff's service charge, was the exact amount of his loss for said item, as the $14.50 was the amount for which he settled with said customer.

For the Army Officer's sweater, $9.00. The total of these items is $60.50.

As heretofore stated the burden of proof was on the plaintiff to prove his loss in accordance with terms of the policy.

It is true that there was a disclaimer of liability by the company (Plaintiff's Exhibit No. 2) but this disclaimer operates only as a waiver of a provision which is merely a "condition precedent to the bringing of an action", 22 O. Jur. page 744, Sec. 643. This principle does not relate to the amount of recovery that may be had in such a suit or the evidence necessary to establish the amount that may be recovered.

$60.50, then, represents the loss, as established by the evidence, if such loss is to be calculated according to the terms of the contract of insurance.

It is, however, claimed by plaintiff that by applying the doctrine of Insurance Co. v Corbett, 134 S. E. 336, judgment should be awarded for the sum of $500.00.

In that case it was held:

"Under a policy of insurance covering 'actual loss or damage' by collision to an automobile, and stipulating that 'in any event the company·shall be liable only for the actual cost of repairing, or, if necessary replacing the parts damaged or destroyed,' the company's principal or primary liability, where liability exists, is for the difference between the value of the property immediately before the injury and its value immediately afterwards; the stipulation that the liability shall not exceed the cost of repair or replacement being ·a subordinate provision, to be pleaded defensively, with facts showing its applicability, if the company would reduce or limit its liability by reason thereof. In a suit upon the policy, to recover an amount appearing to have been determined by appraisers to be the amount of loss measured as above indicated, the petition was not subject to demurrer upon the ground that it showed that the appraisers had applied a measure of liability different from that contemplated by the policy; it not appearing that the insurer had sought to have the appraisers estimate the loss in accordance with such special provision."

We think, however, that that case is readily distinguishable from the case at bar. In the instant case the main policy without endorsement No. 1 does not insure consumer's goods at all. It is only by virtue of the said endorsement that consumers' goods are covered, and the pertinent paragraph thereof, heretofore quoted, is not subdivided into provisions for "principal or primary liability", with a "subordinate provision" limiting liability. The paragraph of the endorsement with which we are dealing is an integral whole—an entirety—which is not divisible or separable. Coverage of consumer's goods is only to the extent of ten times—(doubled by endorsement No. 2) "the insured's charge to the customer for the service rendered." It will be noted that the word "Provided" is preceded and followed by commas—so that the language used is continuous, and there is no separation into primary liability with a subordinate provision.

The case cited is further distinguishable as will be noted from the following paragraph from the opinion:

"* * * it would seem that if the insurer saw fit to submit the question of the amount of its liability to appraisers, without insisting upon such secondary or subordinate stipulation and without bringing facts before them to show its applicability in reducing the liability, and if the appraisement was otherwise valid, the insurer could not rely upon such matter in defense to a suit upon the policy for the amount so determined by the appraisers. But whether it might do so by plea is a question not for decision under the record before us. The question now presented is whether the defense could be made by a demurrer attacking the petition upon the ground that it appeared that the appraisers determined the amount of the loss in a manner contrary to the terms of the policy, where there is nothing to show that the defendant made any contention before them that its liability should be fixed by the special provision referred to. We are satisfied that the defense could not be so made by demurrer."

We see no reason in the case at bar for departing from the ordinary and usual rule which casts upon the plaintiff the burden of proving his case and his loss as covered by the contract of insurance and of establishing his loss within the terms of the endorsement, by virtue of which, only, loss on consummer's goods was covered.

Finding on the issues joined for the plaintiff in the sum of $60.50 and costs, for which amount judgment may be entered. Motion for new trial, if filed, may be overruled with exceptions.