E. J. Donahoe, d/b/a Donahoe Investment Company, appellant, v. Casson's Market, Inc., et al., appellees.

No. 49121.

(Reported in 84 N.W.2d 29)

June 26, 1957.

John Connolly III and Bernard J. Connolly, both of Des Moines, for appellant.

Ray Rosenberg, of Des Moines, for appellees.

HAYS, J.—This is a law action for the recovery of a real-estate broker's commission. The petition is in two counts: Count I alleges an express contract with defendants. Count II seeks recovery on a quantum meruit theory. Trial was to the court without a jury. The trial court dismissed both counts and from judgment thereon plaintiff appeals.

Two alleged errors are set forth by appellant: (1) The findings of fact and conclusions of law made by the trial court are not supported by the testimony. (2) The court failed to make a finding upon Count II of appellant's petition.

I. As to the second alleged error. The trial court in its findings of fact makes no reference to there being two counts and apparently considered them together. In its conclusions of law, paragraph 5, the court held: "That the plaintiff is not entitled to recover any commission from any of the defendants, *either for* (a) an *express* agreement of employment, or (b) upon *implied* agreement to pay a reasonable fee." (Italics ours.) No request for a separate or more detailed finding was made by plaintiff as he is authorized to do under rule 179, R. C. P. It appears clear to us that by the conclusions of law, above quoted, the court necessarily found the facts to be adverse to appellant's contention. There is no merit in this assigned error.

II. Assigned error No. 1 is that the findings of fact and conclusions of law as announced by the court are not supported by, and are contrary to, the evidence. We assume such a contention includes both counts of the petition.

As before stated, this is a law action tried to the court without a jury. The rule is well established that, in such a situation, on appeal the findings of fact have the force and effect of a jury verdict, and if there appears to be substantial evidence upon which a jury might have found as did the trial court, such findings will not be disturbed. Magness v. Modern Woodmen of America, 146 Iowa 1, 123 N.W. 169; Bagley v. Petermeier, 233

Iowa 505, 10 N.W.2d 1; Cleary v. Wolin, 244 Iowa 956, 58 N.W.2d 830; Staley v. Fazel Bros. Co., 247 Iowa 644, 75 N.W.2d 253.

The Casson's Market, Inc., owned the quarter block of real estate that is located just south of the Iowa-Des Moines National Bank & Trust Company, in Des Moines. Alphonsas Bisignano (commonly called "Babe") was principal stockholder and president. Since June 1951 Babe and Mr. Aurand, president of the bank and also president of the Iowa-Des Moines National Bank Building Corporation, had been discussing sale or rental of the Casson property to the bank. In 1952 John Donahoe, real-estate salesman for plaintiff, approached Babe relative to listing the property with him. It is agreed by all that Babe refused to sign a written listing. Donahoe says Babe told him to see what he could do about finding a tenant and agreed to pay a commission if one was found.

Donahoe contacted Mr. Aurand regarding the property. The record is very clear that he and Aurand discussed a subtenant if the bank leased the property and that Donahoe devoted considerable time and effort in trying to locate one. It also appears that Donahoe had many conversations with Babe about leases, including one with the bank, and attended at least one meeting between Babe and Aurand.

Babe testified that he told Donahoe that the property was for rent and that if he obtained a satisfactory tenant a commission would be paid. He states, however, that in the first conversation he told Donahoe that he was negotiating with the bank and that Donahoe was to have nothing to do with any bank deal.

Mr. Aurand testified that when approached by Donahoe, he was told that Donahoe was acting as agent for Babe; that due to prior conversations with Babe regarding this property he inquired as to Donahoe's status; that Babe informed him that Donahoe had nothing to do with their negotiations, as he was personally handling them.

Early in 1953 the Casson's Market, Inc., transferred the title to the property to Catherine Dwyer Bisignano, trustee for five Bisignano children (there were five separate trusts of which Catherine Bisignano, Babe's wife, was trustee). In midsummer,

1953, a long-time lease was entered into between the trustee and the Iowa-Des Moines National Bank Building Corporation upon terms that had been earlier discussed by Babe, Aurand and Donahoe.

Demands for a commission upon the transaction being refused, this action was commenced.

The trial court found that the deal was made with the trustee for whom Babe was not authorized to act. This may be true, strictly speaking, but whether liability would have attached to the trustee, had the court found an agency between Babe and Donahoe, is not here involved. The court accepted Mr. Aurand's and Babe's version to the effect that the negotiations by the bank, including the Building Corporation, with Babe, were solely between the two and did not include Donahoe. Under the record the court could so find and such a finding would not necessarily be inconsistent with Donahoe's activities, in trying to get a deal between Babe and the bank, for the reason that there could be no subtenancy unless the bank became Babe's tenant. That Donahoe ever obtained a tenant for Babe, other than the bank, is not even suggested.

Under the rule governing appeals in situations of this kind, there being substantial evidence to support the court's findings, such findings are binding upon this court.

The judgment of the trial court must be and is affirmed.— Affirmed.

All JUSTICES concur.