IN RE ESTATE OF NELLIE K. DASHIELL, deceased.

HENRY L. MOFFETT, objector to two purported 1950 codicils to will; MABEL A. BODEN, proponent-appellant.

No. 49517.

(Reported in 94 N.W.2d 111)

JANUARY 13, 1959.

W. K. Cash, of Albia, and Kent Emery, of Des Moines, for appellant.

Stuart & Stuart, of Chariton, for appellee.

HAYS, J.—Decedent left a will, dated March 10, 1941, to which were appended three codicils dated September 6, 1943, July 19, 1950, and September 18, 1950, respectively. Objections

being filed only as to the two 1950 codicils, the will and the 1943 codicil were admitted to probate. The objections were based upon mental incapacity of testatrix and undue influence of other persons, particularly Harley Boden. Trial was to the court without a jury and it was specifically found by the court that contestant had established both grounds of the objection, and the two 1950 codicils were denied probate.

■■ I. While two errors are assigned, i.e., failure of contestant to sustain his burden of proof as to each ground of the objection, the issue before this court is not as to the soundness of the court's decision, but is whether or not under the record there are sufficient facts to generate a jury question had the trial been to a jury. If so, the decision of the court is binding upon this court. Cleary v. Wolin, 244 Iowa 956, 58 N.W.2d 830; Donahoe v. Casson's Market, Inc., 248 Iowa 1106, 84 N.W.2d 29. Likewise, the specific finding of the court on each ground is similar to a special finding by a jury on each ground and, if a jury question is presented on either, the decision must stand. In re Will of Fenton, 97 Iowa 192, 66 N.W. 99; In re Will of Van Houten, 147 Iowa 725, 124 N.W. 886; In re Will of Richardson, 199 Iowa 1320, 202 N.W. 114; Ward v. Sears, 247 Iowa 1231, 78 N.W.2d 545.

II. Testatrix, who died in 1956 at the age of 89, was, at the time the will and first codicil were executed, a resident of Monroe County, Iowa. It was prepared by Edmond B. Morris, an attorney and a close friend and confidant of the Dashiell family. In 1948 testatrix moved to California where the two codicils in question were executed. They were prepared in the law office of one Bert B. Snyder, now deceased, of Santa Cruz, California. They were both witnessed by the said Snyder and a Mrs. E. Ivy Abbott, his secretary. Mrs. Abbott testified she saw Mrs. Dashiell on three occasions, when she came in to discuss the first codicil and when she came in to sign the codicils. Mr. Snyder dictated to witness each codicil, but the record is silent as to any conference between testatrix and Snyder regarding the second codicil. It is also silent as to how or from whom Snyder received information or instructions concerning the second codicil, nor was the witness questioned as to the mental or physical condition of testatrix at said time.

Under the terms of the will, all property was to be divided into shares of one third and two thirds. The one-third share was to pass one half to Sam W. Knight, a brother of testatrix, and one half equally to two nephews, Harley (E. H.) Boden and Robert Boden. The two-thirds share was to pass to five named persons, one of whom, Harry Moffett, is the contestant here. In 1949 Sam W. Knight died, and by his will testatrix was bequeathed a sizable amount of property.

By the codicil of July 19, 1950, that provision of the will dealing with the one-third share was changed. It gave to the two nephews, Edward H. and Robert K. Boden, *and to the survivor thereof, should either predecease testatrix without issue,* the entire one-third share and all property received or to be received from the Sam W. Knight estate.

Under the codicil of September 18, 1950, the codicil of July 19, 1950, was revoked and in lieu thereof it was provided that the one-third share and all property received from the Sam W. Knight estate should go to the said two nephews, and if Edward H. Boden predeceased testatrix his share should go to his wife, Mabel A. Boden. If Robert Boden should predecease testatrix his share should go to his issue. Thus, it will be observed, the only difference between the two codicils is the elimination of the provision "and to the survivor thereof, should either predecease me without issue" and the substitution of the provision that Edward H. Boden's wife should take his share, should he predecease testatrix. Edward H. Boden had no issue and died in 1952. Robert K. Boden at the time of the execution of both codicils had issue.

III. The record shows that in January 1951 testatrix entered the La Sierra Rest Home in Riverside, California, and remained there until October 1951, when she was brought back to Albia, Iowa. The proprietor of this home testified she observed her on various occasions between late in 1949, when she visited a friend at the home, and 1951, when she became a resident there. During the time she lived at the home, witness saw her often. She states testatrix was very frail physically, was forgetful, unable to carry on a conversation or to intelligently read or write; did not recognize people, friends or rela-

tives, and was very responsive when told what to do or not to do; Harley Boden made the arrangements for her to enter the home and brought her there; he also, without any prior notice, came early one day in October and took her away; that he was rough and domineering with her and managed all of her business affairs. The witness stated that, in her opinion, testatrix had no conception of what property she had or who her relatives were.

Howard Simpson, a brother-in-law, stated that in May of 1950 he visited with testatrix in Riverside and found her with all her papers on the bed. Among them were several checks which had not been cashed. He told Harley Boden of her condition and shortly thereafter Harley took her to Santa Cruz, where she lived with them until taken to the rest home.

Dr. Henry C. Barron, M.D., an examiner in psychiatric matters for the Superior Court of Los Angeles County, saw her at the rest home early in 1951 and on several occasions thereafter. He was called there by the proprietor of the home for a check-up on her, as is required in California for all people entering rest homes. He states she had chronic brain syndrome and psychosis. Its symptoms are confusion, mixed-up thinking, talking, not recognizing people that she should know, disorientation so far as time and place are concerned; that this disease is progressive and that, in his opinion, her condition six months prior to the time he first saw her was not materially different. He gave it as his opinion that she was mentally unsound in July 1950. It appears quite clearly that she was mentally incompetent at the time she was brought back to Iowa.

Also in the record are numerous letters written by E. H. Boden to Edmond B. Morris in 1949, 1950 and 1951. Therein he states he has been given a power of attorney to handle Mrs. Dashiell's property; that he was well aware of her mental condition and realized that she soon would require constant care. *Under date of September 13, 1950,* he wrote Morris, in part as follows:

"*The Codicil* to her will concerning the S. W. Knight portion of her estate *was not properly drawn,* as it provides for my portion (should certain conditions occur) that my share go to my issues, a fact which does not exist, *so it will be changed*

*to provide for my, immediate heirs.* You will hear from Mr. Snyder at a later date." (Italics ours.)

In October 1955 Mabel A. Boden wrote Morris a letter in which she states:

"I was told that the will made there in Calif., was sent to you immediately—plus a codicil—how many codicils Goodness knows. Undue pressure and positive browbeating was the methods to obtain that will, as soon as her legacy came from Uncle Sam. * * * Aunt Nellie never wanted it changed. So help me God! Well Bob Boden has the original or the copy, which I don't know, no time was lost—which now the way it's written makes him sole heir—(That is the one I saw)."

IV. All parties named as legatees in the will and codicil except Mabel Boden entered voluntary appearances in this action. Robert K. Boden, in his appearance, acknowledged before a Notary Public in California, stated, "I do not desire to contest the objections to said codicils which are now on file and pending in said court."

Mabel Boden is the only person seeking probate of these two codicils. It is clear that under the will and first two codicils she takes nothing nor would she take by inheritance in the absence of a will. The trial court held she was not a party entitled to have the July codicil probated and, there being no resistance to the objections, denied its probate.

█ █ V. Undue influence means a substitution of the will of the person exercising the influence for that of the testator. It must operate at the very time the will is executed and must be the dominating factor. It is usually established by circumstantial evidence and may be and often is based upon a cumulation of many factors. Olsen v. Corporation of New Melleray, 245 Iowa 407, 60 N.W.2d 832. In In re Estate of Ankeny, 238 Iowa 754, 28 N.W.2d 414, four elements are listed as essential to establish undue influence: (1) a person clearly subject to undue influence; (2) opportunity to exercise such influence; (3) a disposition to exercise such influence for the purpose of procuring an improper favor, and (4) the result clearly appearing to be the effect of such influence. See also 94 C. J. S., Wills, section 239; 95 C. J. S., Wills, section 463; 57 Am. Jur., Wills, section 389.

■ VI. As to the September 1950 codicil this record reveals, and the jury could find, the testatrix to have, at best, at the time the codicil was executed, an extremely confused and disturbed mental, combined with a frail physical, condition; she was under the domination of Harley Boden to whom she had given a power of attorney and in whose home she was residing at the time the codicils were executed; that Harley Boden felt the July 1950 codicil was unfair to him and his intention that it be changed; that it was changed and by such change his immediate family, his wife, Mabel Boden, received a substantial benefit.

We find ample evidence to warrant a jury submission of the question of undue influence, and the trial court's findings thereon are binding on this court.

In view of the above finding, it is not necessary to pass upon the issue of mental incapacity.

The judgment of the trial court is affirmed.—Affirmed.

THOMPSON, C. J., and BLISS, GARFIELD, GARRETT, LARSON, and PETERSON, JJ., concur.

THORNTON, J., takes no part.