BROWN MANUFACTURING COMPANY, INC., a corporation, plaintiff cross-appellant, v. PAUL CROUSE, d/b/a CROUSE CARTAGE COMPANY, defendant-appellee.

PAUL CROUSE, d/b/a CROUSE CARTAGE COMPANY, cross-petitioner appellee, v. MARYLAND CASUALTY COMPANY, a corporation, defendant-appellant.

No. 49918.

(Reported in 102 N.W.2d 154)

April 5, 1960.

Michael H. Murray, of Logan, for plaintiff cross-appellant.

Edward S. White, of Carroll, for defendant-appellee.

Irish & Haughey, of Des Moines, for defendant-appellant.

THORNTON, J.—Two A-4 Niagara Punch Presses owned by plaintiff corporation were damaged in the course of transportation on a tractor-trailer unit. The damage occurred when the trailer passed under the railroad viaduct over U. S. Highway

No. 30 south of Missouri Valley. Defendant received the presses from the initial carrier, Watson Brothers Transportation, at Omaha for shipment to plaintiff at Woodbine. Plaintiff purchased the presses in Chicago and Watson Brothers transported them to Omaha. Defendant interchanged the trailer used with Watson Brothers because of the nature of the merchandise. The presses weigh 18,000 pounds and it is necessary to load and unload them with cranes. Certain gears were knocked off the presses damaging them to such an extent the cost of repair would exceed their value.

The plaintiff, owner of the punch presses, will be referred to as plaintiff cross-appellant; defendant as insured appellee; and the defendant on the cross-petition will be referred to as insurer appellant.

Plaintiff cross-appellant brought this action to recover the value of the presses and transportation charges against insured appellee and insured appellee cross-petitioned against his insurance carrier, Maryland Casualty Company, the insurer appellant, for his loss on a policy issued him by the casualty company. The case was tried to the court without a jury. The trial court entered judgment against the insured appellee in the sum of $6715.20 plus interest and costs, and insured appellee was awarded judgment in the same amount against the insurer appellant. In addition the court held insured appellee was entitled to recover attorney fees and other expenses incurred by him in defense of this action as against the insurer appellant, and reserved jurisdiction to determine the amount of the fees and expenses at a subsequent hearing in accordance with a stipulation of the parties. In his findings of fact and conclusions of law the trial court found the value of the presses was $6250 and the transportation and handling charges were $465.20.

The insurer appellant contends the loss is not within the coverage of the policy; it is not obligated under the policy to defend the original action or to pay the cost of defense incurred by insured appellee; and transportation charges and handling costs are not proper items of damage under the policy. Plaintiff

cross-appellant appeals because the judgment is too small contending he should have been awarded $7465.20, the amount of his prayer, with interest and costs. Insured appellee does not appeal.

The policy under consideration is known as an "Inland Marine Floater Policy", is motor truck cargo insurance, and insures the liability of the insured appellee as a carrier for direct loss or damage for certain specified perils on shipment of general freight while loaded for shipment and in transit in or on vehicles owned, leased or operated by insured appellee.

I. The first contention of the insurer appellant is based on the following provision of the policy:

"This policy insures the assured's liability for loss of or damage to property insured hereunder directly caused by: * * * (b) Collision, i. e., accidental collision of the vehicle with any other vehicle or object."

It contends there is no evidence to support the finding of the trial court that insured appellee's trailer did collide with the railroad viaduct, claiming that the only collision was between the load itself and the viaduct.

In determining this contention, the findings of fact of the trial court sitting without a jury in a law action are binding upon us if there is substantial support in the evidence. And we consider the evidence in the light most favorable to the judgment of the trial court. In re Estate of Dashiell, 250 Iowa 401, 94 N.W.2d 111; Donahoe v. Casson's Market, Inc., 248 Iowa 1106, 84 N.W.2d 29, and citations; and Curtis v. Wilkins, 248 Iowa 1314, 1318, 85 N.W.2d 546, 548.

The trial court found as a fact the tarpaulin roof of the trailer was a part of the vehicle and a collision with the roof was a collision with the vehicle. There is ample evidence to support this finding. The trailer is known as a "three-quarter open top." It is especially designed for hauling heavy machinery and is so constructed that cranes may be used for loading and unloading. The front one quarter of this roof is of solid construction. The roof of the rear three quarters of the trailer consists of a canvas tarpaulin affixed to the rear of the solid roof. The tarpaulin is affixed to the solid roof by first securing

the canvas to a wooden strip, about one by one, and the tarpaulin is then secured to the rear of the solid roof by placing a metal strip over the wooden strip and fastening the tarpaulin, wooden strip and metal strip to the solid roof with metal screws. This is removable with considerable work and is not removed in the ordinary course of use. The tarpaulin is supported by metal stays that fit into sockets on the sides of the trailer and is secured on the sides and rear by ropes tied to a pipe that runs clear around the trailer. Trailers of this type are purchased from the factory so constructed. The bed of the trailer is 35 feet long and eight feet wide. It is 48 inches above the roadbed and from the bed of the trailer to the peak of the metal stays it is 8' 9", making an over-all height of 12' 9" when the trailer is empty. Insured appellee, Paul Crouse, testified he had been in the trucking business since 1929 and he could determine the height of equipment he was using with various loads, and that the height of the trailer here in question when loaded with 18,000 pounds, the weight of the presses, was in his opinion 12' 6". The height of the punch presses was 8' 8" or one inch below the highest point of the metal stays. The presses were loaded on the left side of the trailer, the side of the trailer nearest the center of the road, behind the solid roof, covered by the tarpaulin over the stays and bolted to the floor of the trailer. As so loaded it is a fair inference the highest point of the presses was touching or just below the canvas top. It was stipulated the presses were damaged when the trailer passed under the railroad viaduct south of Missouri Valley. The lowest point of the viaduct above the roadbed as shown by Exhibit 6 is 12' 8" and the highest point 12' 11½". The difference in height is caused by the variation in the roadbed. The evidence further shows the tarpaulin was torn above the presses in such a manner as to leave a jagged tear. As described, a proper inference is the tear was caused when it came in contact with the viaduct and was crushed between the machinery and viaduct. The oral evidence and Exhibits 3 and 4 show the metal strip securing the tarpaulin to the solid part of the roof was torn loose and pulled back in the center of the trailer and completely loose on the right-hand side. The oral evidence also shows stays farther back on

the trailer were bent and pulled loose from the sockets on the side of the trailer. The insurer appellant offered no evidence.

It seems clear from the foregoing the tarpaulin supported by stays and attached to the solid roof constitutes the roof for the rear three quarters of the trailer and is a part of the vehicle. And it is equally clear the tarpaulin and stays as well as the presses collided with the viaduct. It is certainly a proper inference the presses would not have collided with the viaduct if the tarpaulin roof did not, and that such collision of the roof is the direct cause of the loss. For this court to hold otherwise would require a holding, as a matter of law, the tarpaulin roof so attached does not constitute a part of the vehicle. Under the circumstances presented we cannot so hold.

We find no support in the evidence for the statement in the insurer appellant's brief and argument that this was a collision between a portion of the cargo as it extended over and above the top of the vehicle and some other object.

We have not been cited to, nor have we found, a case with circumstances identical to the one before us. Our holding here finds support in Edgerton & Sons v. Minneapolis Fire & Marine Ins. Co., 142 Conn. 669, 116 A.2d 514, 516, 517. Also, though a contrary result was reached, the discussion in Jenrette Transport Co. v. Atlantic Fire Ins. Co., 236 N. C. 534, 73 S.E.2d 481, 485, 486, supports our holding. Other authorities cited by insured appellee: C. & J. Commercial Driveway v. Fidelity & Guaranty Fire Corp., 258 Mich. 624, 242 N.W. 789; Gould Morris Electric Co. v. Atlantic Fire Ins. Co., 229 N. C. 518, 50 S.E.2d 295; Garford Trucking, Inc., v. Alliance Ins. Co. of Philadelphia (1952), 2 Cir., 195 F.2d 381; Bucks County Construction Co. v. Alliance Ins. Co. of Philadelphia, 162 Pa. Super. 153, 56 A.2d 338; and Jorgenson v. Girard Fire & Marine Ins. Co., 229 Minn. 48, 38 N.W.2d 209, turn on different fact situations and policy provisions and a discussion of them would serve no purpose.

The insurer appellant cites Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 134 Neb. 188, 278 N.W. 374, and Mendelsohn v. Automobile Ins. Co., 290 Mass. 228, 195 N.E. 104, but the fact situations in each relative to type of load and

vehicle are clearly distinguishable. See annotation, 36 A. L. R. 2d 506, 522.

II. Condition 15 of the policy provides in part: "* * * If suit is brought against the assured * * * the Company may, at its own cost, defend such suit * * * the assured shall not * * * incur any expense * * * except at his own cost without the written consent of this Company previously given." In addition the company reserves the right to adjust or settle the claim and the assured is required to co-operate in a settlement or suit.

The above condition gives the insurer appellant an option either to defend or not to defend. Such a provision is clearly for the benefit of the insurer to control the litigation if it wishes.

The insurer appellant has not seen fit to favor us with any cases in support of its position, that it is not bound to defend, but relies upon the policy provision. The cross-petitioner appellee urges the following authorities: Jones v. Southern Surety Co., 210 Iowa 61, 230 N.W. 381; Hully v. Aluminum Co. of America, 143 F. Supp. 508 (D. C. S. D. Iowa); Commercial Casualty Ins. Co. v. Tri-State Transit Co. of Louisiana, 190 Miss. 560, 1 So.2d 221, 133 A. L. R. 1510; Southwestern Bell Telephone Co. v. Ocean Accident & Guarantee Corp., 22 F. Supp. 686 (D. C. W. D. Mo.); Jordan v. Stephens, 7 F. R. D. 140 (D. C. W. D. Mo.); and 49 A. L. R.2d 694.

In each of the cited cases the policy contained a provision requiring the insurance company to defend. In Jones v. Southern Surety Co., supra, at page 63 of 210 Iowa, and page 383 of 230 N.W., this court set out a portion of the title insurance bond there under consideration as follows, "By the conditions of the bond, section 1, the Southern Surety Company 'will at its own cost defend the assured in all actions or proceedings founded on a claim of title or incumbrance prior in date to this bond and not excepted therein. * * *.' "

In 49 A. L. R.2d 694, 697, the annotation is limited to cases wherein the policy contains a provision obligating the insurer to defend. We have found no authority requiring an insurance carrier to pay the cost of defense under a provision in the policy the same as or similar to the provision here.

The insurance contract not requiring the insurer appellant to defend it follows that it cannot be required to pay the cost of defense incurred by insured appellee under the circumstances presented.

III. The policy provides: "SPECIAL CONDITIONS. (a) Valuation. In case of loss or damage, no goods or merchandise shall be valued in excess of the net cost to the shipper to replace with like, kind or quality. If replacement cannot be effected, or if the net cost or replacement would exceed the invoice price, the limit of this company's liability shall be the invoice price of said goods or merchandise to the consignee. In the absence of an invoice, bill of lading, or shipping receipt (stipulating values) the value of the goods or merchandise subject to claim hereunder shall not exceed the cash market value on date and at place of shipment", and the liability for loss of or damage to property upon any one vehicle is limited to $25,000 and to $50,000 on account of claims arising out of any one disaster at one time. There is no reason advanced as to why the above provisions were not within the intentions of the parties when the policy was written. This is as true of Special Condition (a) on valuation of goods or merchandise as it is of the $25,000 and $50,000 policy limits. In each instance the insured appellee bargained for nothing more and the insurer appellant in the event of loss agreed to pay nothing more. There is no provision to pay transportation or unloading charges in the policy. In its findings of fact and conclusions of law the trial court determined the value of the presses to be $6250 and that they had no salvage value. Under Special Condition (a) this is the only amount, except interest and court costs, for which insurer appellant can be held liable. As supporting this view see Sands v. Iowa Mutual Ins. Co., 244 Iowa 16, 55 N.W.2d 572.

In 45 C. J. S., Insurance, section 980e, pages 1179, 1180, is this statement, "The general rule that, in the absence of statute, the contract of the parties fixes the extent of loss to be borne by, and the liability of, the company has been applied to contracts of bankers' blanket insurance, * * * and such general rule has been applied to * * * transportation insurance, * * *." And in 46 C. J. S., Insurance, section 1390, page 691,

this statement, "The amount of the recovery in an action on an insurance policy generally depends on, and is limited by, the terms of the policy." See also Bulman v. Bulman, 271 Wis. 286, 73 N.W.2d 599; and McCarty v. Great Central Mut. Ins. Co. of Peoria, Ohio Com. Pl., 78 N.E.2d 176.

■ In addition we find no authority for the allowance of transportation and unloading charges as an element of damages in an action for damage to personal property. Where, as here, the property is damaged to such an extent the cost of repair would exceed the value, the measure of damages is the reasonable market value immediately before the damage, less salvage value, if any. Langham v. Chicago, R. I. & P. Ry. Co., 201 Iowa 897, 208 N.W. 356; Kohl v. Arp, 236 Iowa 31, 17 N.W.2d 824, 169 A. L. R. 1067.

IV.  Plaintiff cross-appellant asks for a reversal because of the inadequacy of the verdict. His petition alleged the value of the presses to be $7000. He and an expert called by him testified the value of the presses immediately before the accident was $7500 and he testified the presses cost him $6250 in Chicago. The trial court as the trier of fact could allow him the reasonable value immediately before the accident as shown by the evidence not to exceed the amount claimed. It should be pointed out, plaintiff cross-appellant in his petition claimed $7000 as the value of the presses and $465.20 for transportation and unloading charges, and his prayer was for $7465.20. The insured appellee made no objection to the transportation and unloading charges. The highest amount which the trial court could have allowed as the value of the presses was $7000.

■ Even though plaintiff cross-appellant and his expert were the only value witnesses the trial court as trier of fact was not bound to take their testimony as entirely true. Fowlc v. Parsons, 160 Iowa 454, 456, 141 N.W. 1049, 45 L. R. A., N. S., 181; Moore v. Chicago, R. I. & P. Ry. Co., 151 Iowa 353, 360, 131 N.W. 30; Wood v. Wood, 220 Iowa 441, 444, 262 N.W. 773; and Nicholson v. City of Des Moines, 246 Iowa 318, 323, 67 N.W.2d 533. Here the trial court, in the same manner as a jury, has the duty to assess damages as shown by the evidence, subject to the control of this court if such are inadequate

or excessive. The verdict here is within the range of the testimony and finds support therein.

No question of law or fact remains to be determined upon a retrial. The case is affirmed on the cross-appeal of plaintiff, and is reversed in part on the appeal of the insurer appellant, Maryland Casualty Company. Our holding is the insurer appellant is not liable for attorney fees and cost of defense and is not liable for transportation and unloading charges under this record, but is liable for the value of the punch presses as found by the trial court. The case is remanded with instructions to enter judgment in accordance herewith. Costs are taxed 50% to insurer appellant, 25% to insured appellee, and 25% to plaintiff cross-appellant.—Affirmed in part, reversed in part, and remanded with instructions.

All JUSTICES concur except OLIVER, J., not sitting.