**KING ALUMINUM CORPORATION**

**v.**

**WILLIAM HYNDMAN III INSURANCE AGENCY, INC.**

**and**

**American Casualty Company of Reading, Pennsylvania.**

**Civ. A. No. 72–2534.**

United States District Court,
E. D. Pennsylvania.

Feb. 7, 1974.

John B. Brumbelow, Philadelphia, Pa., for plaintiff.

Joseph M. Gindhart, Philadelphia, Pa., for William Hyndman III Ins. Agency, Inc.

G. Wayne Renneisen, Philadelphia, Pa., for American Cas. Co. of Reading, Pa.

## MEMORANDUM

FOGEL, District Judge.

Plaintiff, King Aluminum Corporation (King), brought this action against Defendants William Hyndman III Insurance Agency, Inc. (Hyndman) and American Casualty Company of Reading, Pennsylvania (American Casualty) to recover damages in the amount of $250,000 either from Hyndman for errors and omissions in failing to obtain a policy of umbrella excess insurance, or from American Casualty on the theory that it had in fact undertaken to provide the coverage. The relevant facts may be summarized as follows:

On November 30, 1971, an employee of King, acting within the scope of his employment, was involved in a serious automobile accident in Ohio. A suit was brought against King in the Court of Common Pleas of Greene County, Ohio, seeking recovery in the amount of $800,000. King duly notified American Casualty, which company denied liability on the basis of its assertion that the incident had occurred after expiration of the original policy period or any agreed-upon extensions thereof. The Ohio suit was subsequently settled for $350,000. King's claim in the instant action is limited to an agreed-upon figure of $250,000, the sum required to complete the settlement after the $100,000 primary insurance had been exhausted.

Plaintiff's claim is based upon two mutually exclusive legal theories. King first contends that the excess insurance policy was in force with American Casualty, pursuant to an alleged oral binder given by agents of American Casualty to agents of Hyndman, the insurance broker for King during the period in question. In the alternative, King alleges that if the excess insurance policy was not in force at the time of the Ohio accident, Hyndman is in breach of its contract to procure and keep in force excess insurance of the type specified, and must respond, under the law of Pennsylvania, to the extent of King's loss, which was a direct consequence of Hyndman's failure to carry out its undertaking.

The matter was tried before a jury, which returned a verdict on January 24, 1974, in favor of King against American Casualty. The verdict was molded in accordance with a pretrial agreement of the parties.

By agreement of the parties, one final issue has been submitted to the Court alone for determination. This involves counsel fees incurred by King in defense and settlement of the suit brought in the Court of Common Pleas of Greene County, Ohio. King seeks to charge American Casualty with these fees, which amount to $2004.96.

King has argued that if American Casualty had properly conceded coverage in the Ohio suit, King would have had no need to retain counsel, since the limits of the umbrella insurance coverage ($5,000,000) were substantially in excess of the damages claimed. King asserts that American Casualty's denial of coverage, in light of the $100,000 limit of the underlying insurance, compelled it to

protect its interests by retaining its own counsel in Ohio.

American Casualty has filed no brief in this matter, preferring to rest on the language of the policy, which does not require American Casualty to defend King in cases of the type which arose in Ohio.

The narrow issue presented for decision is as follows: In a case in which there is no contractual duty on the part of an excess liability insurer to defend the insured against claims falling within the coverage of the policy, may the insured nonetheless recover counsel fees incurred in the defense of the claim, when the insurer has wrongfully denied coverage under the policy, under circumstances in which the potential exposure of the insured could exceed the limit of the underlying insurance?

In support of its claim, King cites cases decided under the law of Pennsylvania which permit recovery by the insured of counsel fees incurred in defending a claim after the wrongful denial of coverage by the insurance carrier. Vanderveen v. Erie Indemnity Company, 417 Pa. 607, 208 A.2d 837 (1965); Ripepi v. American Insurance Companies, 349 F. 2d 300 (3d Cir. 1965). These cases, however, are based on the existence of a duty on the part of the carrier to defend the claim, neglect of which duty amounts to breach of the insurance contract. As the Court stated in *Vanderveen, supra,* 417 Pa. at 608, 208 A.2d at 838:

> An insurer's failure or refusal to defend a claim within the scope of an insurance policy constitutes a breach of contract for which it is subject to damages recoverable in an action of assumpsit. King v. Automobile Underwriters, Inc., 409 Pa. 608, 187 A.2d 584 (1963), and Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484, 72 A.L.R.2d 1242 (1959). This includes the costs required to defend the claim: Cadwallader v. New Amsterdam Casualty Co., supra.

In the instant case, however, it is undisputed that the umbrella policy did not impose a duty upon American Casualty to defend King in the suit brought in Ohio.[1] Since there was no contractual

---

1. The relevant portions of the Umbrella Excess Third Party Liability policy issued by American Casualty are as follows:
"1. COVERAGE A—EXCESS LIABILITY INDEMNITY
The company will indemnify the insured for loss in excess of the total applicable limits of liability stated in the schedule of the underlying insurance. The provisions of the immediate underlying policy are, with respect to Coverage A, incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to any of the same, the amounts of the limits of liability, an 'other insurance' provision and any other provisions therein which are inconsistent with this policy.
If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then 'accident' is substituted for 'occurrence' with respect to such insurance as is afforded under Coverage A of this policy."
" * * * 'loss' means with respect to Coverage A the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. 'Loss' does not include investigation, adjustment, defense or appear costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses; * * * "
"In consideration of the premium set forth herein, it is agreed that Coverage A of this policy is extended to include the following:
1. In the event of the cessation of the obligation of all underlying insurers either to investigate and defend the insured or to indemnify the insured or to pay on behalf of the insured the costs and expenses of investigating and defending the insured, then the company shall either:
(a) assume the duty of investigating and defending the insured against suits seeking damages otherwise covered under this policy, or
(b) indemnify the insured for the reasonable costs and expenses of investigating

obligation to defend King, failure to so defend would not amount to a breach of contract, and an action in assumpsit would not lie to recover counsel fees expended by the insured.

The Supreme Court of Iowa was faced with a similar claim in the case of Brown Manufacturing Company v. Crouse, 251 Iowa 594, 102 N.W.2d 154 (1960). In the *Brown* case, plaintiff corporation brought suit against defendant cartage company for damage in transit to a pair of punch presses. Defendant cross-petitioned against its casualty insurance carrier, which denied liability and asserted that the loss did not fall within the coverage of the policy. The trial court determined that the loss did fall within the coverage of the policy, and awarded the insured defendant counsel fees and expenses incurred in defense of the action, in spite of the fact that the policy did not establish a contractual duty on the part of the insurer to defend the insured. The Supreme Court of Iowa reversed on the question of counsel fees and expenses. The Court stated:

"II. Condition 15 of the policy provides in part: ' * * * If suit is brought against the assured * * * the Company may, at its own cost, defend such suit * * * the assured shall not * * * incur any expense * * * except at his own cost without the written consent of this Company previously given.' In addition the company reserves the right to adjust or settle the claim and the assured is required to cooperate in a settlement or suit.

The above condition gives the insurer appellant an option either to defend or not to defend. Such a provision is clearly for the benefit of the insurer to control the litigation if it wishes.

The insurer appellant has not seen fit to favor us with any cases in support of its position, that it is not bound to defend, but relies upon the policy provision. The cross-petitioner appellee urges the following authorities: [citing cases].

In each of the cited cases the policy contained a provision requiring the insurance company to defend. * * *

* * * We have found no authority requiring an insurance carrier to pay the cost of defense under a provision in the policy the same as or similar to the provision here.

The insurance contract not requiring the insurer appellant to defend it follows that it cannot be required to

and defending suits seeking damages otherwise covered under this policy, whichever the company may elect.
However, nothing contained herein shall be construed as affording coverage for the office expenses of the insured, the salaries and expenses of employees of the insured or the general retainer fees of counsel retained by the insured.
2. As soon as the insured has information that the obligation of all underlying insurers to either investigate and defend, indemnify or pay on behalf of the insured the costs and expenses of investigating and defending the insured has or will cease, the insured shall immediately give written notice to the company. Upon receipt of such notice the company will, within a reasonable time, elect and notify the insured of its decision.
3. The additional obligations assumed by the company under the terms of this endorsement are included in, and not in addition to, the applicable limit of the company's liability.

4. The last sentence in the definition of loss in the policy form is deleted.
5. It is further agreed that:
'When the company elects to proceed in accordance with provision 1(a) of this endorsement, the company shall assume the duty of investigating and defending the insured against suits seeking damages otherwise covered under this policy and shall have the right to make any settlement of any suit as it deems expedient. At all other times the company shall still have the right, but only if it so elects, to participate in the investigation, settlement, trail, appeal or other defense of any claim or suit against the insured.'
6. The additional premium for this endorsement is INCLUDED."
The policy of underlying insurance was issued by Reliance Insurance Company with a coverage limit of $100,000 for injury to one person. Reliance provided counsel in the Ohio suit.

pay the cost of defense incurred by insured appellee under the circumstances presented."

*Brown, supra* at 102 N.W.2d 157, 158.

In the present case, we are in agreement with the position expressed by the Court in *Brown.* No case has been cited to us which supports the imposition upon the insurer of counsel fees incurred in the defense of a suit against the insured, when the provisions of the insurance contract, freely entered into between the parties at arms' length, establish no contractual duty on the part of the insurer to defend the action or to pay the costs of defense. The claim for counsel fees will accordingly be denied.